**Steven L. STIEGELE, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–694.**

Court of Appeals of Alaska.

Feb. 14, 1986.

A. Lee Petersen, Cummings & Routh, P.C., Anchorage, for appellant.

James V. Gould, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

. Steven Stiegele was charged with multiple counts of murder in the second degree, AS 11.41.110, and assault in the second degree, AS 11.41.210(a)(2). The state alleged that he drove his pickup truck off Eagle River Road and into the trees, killing three passengers, and seriously injuring a fourth. The incident occurred on July 20, 1983, at approximately 10:12 p.m. Stiegele was indicted on three counts of second-degree murder, AS 11.41.110(a)(1);[1] three counts of second-degree murder involving the same three victims under AS 11.41.-110(a)(2);[2] and one count of second-degree assault under AS 11.41.210(a)(2).[3]

Stiegele was convicted after a jury trial of all counts charged in the indictment. He appeals, alleging various errors. We affirm. We will discuss the relevant facts in connection with each issue to be decided.

Stiegele first argues that there was insufficient evidence to justify returning an indictment against him for second-degree murder and, *a fortiori*, to sustain jury verdicts convicting him of that offense. While Stiegele separately challenges the indict-

1. Alaska Statute 11.41.110(a)(1) provides:
   (a) A person commits the crime of murder in the second degree if
   (1) with intent to cause serious physical injury to another person or knowing that the conduct is substantially certain to cause death or serious physical injury to another person, the person causes the death of any person.

2. Alaska Statute 11.41.110(a)(2) provides in pertinent part:
   (a) A person commits the crime of murder in the second degree if

   (2) the person intentionally performs an act that results in the death of another person under circumstances manifesting an extreme indifference to the value of human life.

3. Alaska Statute 11.41.210(a)(2) provides in pertinent part:
   (a) A person commits the crime of assault in the second degree if

   (2) that person recklessly causes serious physical injury to another person.

ment and the jury's verdict, he did not specify for inclusion in the record the transcript of evidence taken before the grand jury. Consequently, we will consider only the evidence presented at trial. Stiegele makes two related arguments. First, he contends that there was insufficient evidence to establish that he was the driver of the vehicle involved in the fatal accident. Second, he contends that even if he were the driver, there was insufficient evidence that he engaged in certain conduct with the knowledge that the conduct was substantially certain to cause death, or that he knowingly engaged in conduct under circumstances manifesting an extreme indifference to the value of human life. AS 11.41.110.

On July 20, 1983, Steven L. Stiegele, age twenty-one, was living in a trailer behind a house at Mile 8, Eagle River Road. On that day he attended a party at the house which was also attended by a large number of other young people. People at the party were drinking beer from a keg, and other alcohol, and marijuana was also present. Stiegele participated in the festivities and consumed a substantial amount of alcohol on the premises.

In the evening, Stiegele drove to a nearby Qwik Stop convenience store with Shelley Bathery, age sixteen, who had also been at the party. He was driving a white and reddish pickup truck. The pickup truck belonged to a construction company owned by Stiegele's brother, John. The pickup truck had been made available to Stiegele for his use. Stiegele was seen at the Qwik Stop between 9:30 and 10:00 p.m., sitting at the wheel of the pickup truck looking as if he had been drinking. Shelley Bathery was in the passenger seat and she appeared very intoxicated. Charles White and Brent Barker, friends of Stiegele's, were in the back of the pickup truck. Jesse Adams, another young friend of Stiegele's, arrived with some friends, was asked if he wanted to go to the party and got into the back of the truck. According to two witnesses acquainted with Stiegele, Stiegele was driving the truck as it pulled out of the Qwik Stop parking lot. One

testified that he was driving normally at that point.

At approximately the same time, another witness, Pastor John R. McClung, testified that he saw a reddish pickup truck with two people in the bed near the Qwik Stop being driven in a wild and reckless manner; its tires squealing and spinning and its engine racing. Pastor McClung was certain that he made his observations between 9:30 and 10:00 p.m., since the service at his church had adjourned at that time. He observed the truck spin around 360 degrees in the parking lot, then hit the pavement of the road, almost flip, and head up Monty Road on the left-hand side of the road. Pastor McClung thought that the driver was "either very angry or just had flipped out." A short time later, at 9:58 p.m., Pastor McClung flagged down a police officer and reported to him what he had seen, saying it was the worst case of reckless driving he had seen in Eagle River. Officer James Anderson, who responded to McClung's report, called Officer Billingslea, who was patrolling the Eagle River Road at the opposite end of Eagle River, to alert him to the reckless vehicle. Anderson's call to Billingslea was clocked in at 9:58 p.m. Officer Bradley Billingslea of the Anchorage Police Department testified that he was headed toward Eagle River at about Mile 6.5 or 7 on Eagle River Road at about 10:00 p.m. that evening. After receiving the call from Anderson he continued along the road and saw a pickup truck coming toward him on his side of the road, travelling, by his estimate, about 85 m.p.h. It nearly missed colliding with him. Officer Billingslea slowed down, preparing to turn and chase the truck, then, in his rearview mirror, he saw the truck go off the road, its battery flying out from underneath the hood as it disappeared from his view. Billingslea immediately reported the accident to his dispatcher and requested aid. His call was logged in at 10:12 p.m. Charles Lemons, who lived on Eagle River Road at approximately the site of the accident, testified that at about 10:00 p.m. he saw a red and white pickup truck with

people in the back go by his house at a high rate of speed on the wrong side of the road. He testified that some children were in the back of the pickup screaming for the driver to stop.

After leaving the road, the truck plowed into the woods on the right side of the road at about 80 m.p.h., shearing off two trees. The impact made the windshield pop out, apparently causing the roof to peel back. All of the occupants in the truck were ejected from the truck. Shelley Bathery, Jesse Adams, and Charles White were dead at the scene. Brent Barker survived, with severe mental and physical injuries. Steven Stiegele also survived, suffering relatively minor injuries. At 11:30 p.m. at the hospital, Stiegele's blood-alcohol level was found to be .134. He was also found to have Valium, a mild tranquilizer, in his blood. Shelley Bathery's alcohol level was found to be .116.

Stiegele's theory of defense suggested that Bathery rather than Stiegele was driving the vehicle at the time it crashed. Neither Stiegele nor Barker, the survivors of the accident, had any memory of the events leading up to the accident. The pickup truck belonged to a company owned by Stiegele's brother, and substantial evidence established that Steven Stiegele was driving earlier in the evening. There was evidence that Bathery, though she did not have a driver's license and was not an experienced driver, had driven other vehicles owned by Stiegele's brother's company. Pastor McClung testified that he thought that the person he saw recklessly driving the pickup truck was a male, though on cross-examination he acknowledged that this was based in part on his thought that it was more likely that a boy would drive in such a manner than a girl. Charles Lemons testified that the driver was female with light blonde or reddish hair, though he conceded at trial that he had told the grand jury that a male was driving the vehicle. Shelley Bathery had red hair. There was also evidence that when the truck left the Qwik Stop, Shelley Bathery was wearing a leather jacket and Jesse Adams was wearing sandals. When

their bodies were found after the accident, Shelley Bathery had on a denim jacket and Adams had on tennis shoes. Stiegele reasons that this indicated that the truck could have stopped at Adams' house, a quarter mile from the Qwik Stop, and in between the Qwik Stop and the untimate place of the accident, in order for Bathery and Adams to change clothes, and at that point it was possible that Bathery may have begun driving.

The testimony of the experts was conflicting on many points. Dr. Donald Rogers, a forensic pathologist, testified for the state. He stated that the pattern of injuries did not indicate who was sitting behind the wheel. He also testified that, given the severity of their injuries, the three occupants of the cab were probably thrown out with Adams first, then Bathery, then Stiegele, their injuries decreasing as the truck decelerated. The state's accident reconstruction expert, Corporal James Brown, testified that he could not say with absolute certainty where the occupants of the cab were sitting. However, in his opinion, the right hand and center passengers went out when the truck first struck the two trees, and, in his opinion, having spoken with Dr. Rogers, this was consistent with the injuries of Bathery and Adams. Corporal Brown thought that the driver would have been holding the steering wheel and would have gone out after the truck struck a third tree, when the truck was going much slower. In Corporal Brown's opinion, based on Stiegele's injuries, Stiegele would have been in the driver's position. The defense expert, Mr. James Tubbs, testified that in his opinion, given the force of impact, all the passengers must have been ejected immediately and simultaneously. He did not believe that Stiegele was the driver, and stated the probability of Stiegele being the driver was "very low." In Tubbs' view, Stiegele's injuries were consistent with his having been ejected through the right hand window which in turn would be consistent with Bathery's driving, Adams being in the middle, and Stiegele sitting by the right-hand door.

Based on this evidence, Stiegele makes two related arguments. First, he contends that there was insufficient evidence that he was driving the vehicle at the time of the accident. We disagree. The vehicle belonged to a company owned by Stiegele's brother. It was generally treated as Stiegele's vehicle and he customarily drove it. He was seen driving it shortly before the accident. In light of the totality of the evidence, a jury could reasonably conclude beyond reasonable doubt that Stiegele was the driver of the vehicle. *See, e.g., State v. Gould,* 704 P.2d 20 (Mont. 1985).

More troubling is Stiegele's second argument that the evidence construed most favorably to the state would only support a finding of manslaughter; that conscious of the risks, he recklessly drove, causing the death of his passengers. Stiegele concedes that we have recently affirmed a second-degree murder conviction for a drunk driver. *See Pears v. State,* 672 P.2d 903 (Alaska App.1983), *rev'd on other grounds,* 698 P.2d 1198 (Alaska 1985). Stiegele contends that his situation is distinguishable from Pears'. Pears, while substantially intoxicated, drove recklessly through the streets of Fairbanks, running stop signs and red lights several times before the fatal collision which supported his conviction. The evidence established that he had been previously warned by the police not to drive and begged by his girlfriend not to drive, all to no avail. Pears' actions in driving, despite the warnings of the police and his girlfriend, and the near misses which preceded the fatal accident led us to conclude that Pears' conduct exceeded the threshold of recklessness to the point that it manifested an extreme indifference to the value of human life. Stiegele vigorously argues that *Pears* is distinguishable. He points out that there is nothing in this case to substitute for the warnings that Pears received just before the accident. We disagree. Just before the accident, an eyewitness saw Stiegele's passengers screaming for him to stop. More importantly, the record reflects that Stiegele's vehicle left the road in the process of attempting to negotiate a turn at 85 m.p.h. We believe that a jury could find beyond a reasonable doubt that it was impossible for Stiegele to successfully complete the turn at that speed. The jury could further conclude that Stiegele was well aware of that fact, having lived in the area for many years, and having driven the road and negotiated the same curve well over a hundred times. Stiegele's prior substantial knowledge of the curve and the impossibility of negotiating it at high-speed served to justify a finding that Stiegele attempted the turn knowing that in so doing he was substantially certain to cause his passengers' deaths and, *a fortiori,* that he manifested an extreme indifference to the value of human life. We, therefore, affirm the trial court's order denying Stiegele's motion for judgment of acquittal and denying his challenge to the grand jury indictment. *See United States v. Fleming,* 739 F.2d 945 (4th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 970, 83 L.Ed.2d 973 (1985). *See generally* Isensee, *United States v. Fleming: When Drunk Drivers Are Guilty of Murder,* 23 Am.Crim.L.Rev. 135 (1985).

Stiegele makes some additional arguments which we briefly address. Stiegele argues that the trial court erred in denying his motion for new trial based on newly discovered evidence. He offered testimony by Gertrude Pruett and Max Janke. Their testimony, if believed, would tend to establish that Shelly Bathery, rather than Stiegele, was driving the vehicle at the time of the accident. Judge Buckalew found that their testimony would not produce an acquittal at a new trial, in part, based on his determination of their credibility after observing their demeanor while testifying. We find no abuse of discretion. *Gonzales v. State,* 691 P.2d 285, 286 (Alaska App. 1984).

Stiegele next argues that the trial court committed plain error in failing to expressly authorize him to introduce evidence of Ms. Bathery's past reckless driving. It appears that the parties reached an agreement on this issue at trial which fore-

closes appellate review. During the trial, the state told the court that the matter of Shelley Bathery's driving habits had been resolved. The trial court had earlier expressed some skepticism regarding the admissability of Bathery's past driving, but said that it would allow Stiegele to make an offer of proof or to pursue the issue further. Stiegele did not bring up the matter again. The state indicated that the agreement allowed testimony limited to the fact that Shelley Bathery did sometimes drive the truck. Stiegele's counsel stated, "we so stipulate, and will make no reference to high speed driving." Bathery's mother later testified that Shelley did not have a driver's license and was, "no experienced driver by far," though she did know how to drive. One witness testified for the defense that she had seen Shelley Bathery driving a car belonging to Stiegele's brother's company, though she did not describe Bathery's driving manner. Under the circumstances, Stiegele abandoned this issue at trial.

Stiegele next argues that the trial court abused its discretion by permitting Dr. Donald Rogers, a forensic pathologist and medical examiner, to give an opinion regarding the relationship between the victim's injuries and the relative speed of the pickup at the time each was ejected. The state offered this evidence to bolster its contention that Stiegele, rather than Bathery, was the driver of the car at the time it left the road. Stiegele objected, arguing that no foundation was established for this testimony. Specifically, he argued at trial and also on appeal, that Dr. Rogers disclaimed any expertise in physics and accident reconstruction and, consequently, was not qualified to testify regarding any relationship between the nature of the respective victims' injuries and the sequence in which they exited the vehicle. We find no abuse of discretion. *Handley v. State*, 615 P.2d 627, 630 (Alaska 1980).

Stiegele argues that the trial court erred in failing to honor a defense request that it specifically inquire whether any trial juror had seen an Anchorage Daily News headline published during the trial, which in Stiegele's view, misquoted Dr. Rogers' testimony as effectively placing Stiegele in the driver's seat. In Stiegele's view, this error compounded what Stiegele contends was the court's earlier error in permitting Dr. Rogers to give the opinion allegedly misquoted. *See Brown v. State*, 601 P.2d 221, 232 (Alaska 1979); ABA Standards Relating to Fair Trial and Free Press, § 3.5(e) and (f) at 12–13, and commentary at 40–45 (Approved Draft 1968). Judge Buckalew concluded that the headline was not so erroneous or prejudicial that a specific inquiry was warranted. He feared that the inquiry would focus the jurors' attention on the article and risk greater prejudice than it would defuse. Given Judge Buckalew's frequent admonition to the jury not to read or consider newspaper comments, we find no abuse of discretion or harmful error. *Brown*, 601 P.2d at 233.

Finally, Stiegele argues on appeal that there was prosecutorial misconduct during trial and in closing argument. Specifically, he points to the prosecutor's sarcasm in disparaging Stiegele's expert witness. In Stiegele's view, the prosecutor clearly suggested that Stiegele's trial counsel had suborned perjury. Stiegele's only objections, during trial and closing argument, that alleged prosecutorial misconduct were sustained by the trial judge. Stiegele did not seek either a cautionary instruction or move for a mistrial before the jury deliberated. Stiegele has not established that the prosecutor's actions constituted plain error. *See United States v. Young*, 470 U.S. ——, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985).

The judgment of the superior court is AFFIRMED.