**Otis RICHEY, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–624.

Court of Appeals of Alaska.

April 18, 1986.

Susan Orlansky, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

W.H. Hawley, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., SINGLETON and SHORTELL,* JJ.

## OPINION

BRYNER, Chief Judge.

Otis Richey was convicted by a jury of assault in the second degree, in violation of AS 11.41.210(a). The offense is a class B felony. AS 11.41.210(b). As such, it is punishable by a maximum term of ten years' imprisonment. A second felony offender convicted of the offense is subject to a presumptive term of four years' imprison-

ment. AS 12.55.125(d). Superior Court Judge J. Justin Ripley presided over Richey's sentencing hearing. After concluding that Richey had previously been convicted of a felony, and after determining the presence of one aggravating factor, Judge Ripley sentenced Richey to an adjusted presumptive term of six years, with two years suspended. Richey appeals, arguing that the trial court improperly excluded evidence that the alleged victim, on a prior occasion, had falsely accused him of another assault. Richey also challenges the propriety of a transitional instruction given by the trial court concerning a lesser-included offense. Finally, Richey challenges his sentence, alleging that he should not have been sentenced as a second felony offender, that the sentencing court erred in rejecting proposed mitigating factors, and that the sentence he received is excessive. We affirm.

The charge in this case stemmed from an assault committed by Richey against his girlfriend, Rosenda Topps, with whom he shared a residence. Approximately five months before the alleged assault, Topps made a report to the police concerning another alleged assault on her by Richey. At that time, Topps claimed that, during a fight with Richey, she had gotten covered with lighter fluid and that Richey threw matches at her. Based on this report, criminal proceedings against Richey were initiated. About a week before the incident alleged in the present case, however, Topps executed a sworn statement at the district attorney's office, recanting the accusation against Richey. She swore that, although she and Richey had been involved in a fight, he did not throw matches at her.

Prior to the trial in the present case, the state filed a motion seeking a protective order precluding the defense from inquiring, during Topps' cross-examination, into the prior false report. After a brief hearing, Judge Ripley granted the protective

---

* Shortell, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

order. Judge Ripley feared that cross-examination by Richey's counsel concerning the prior false report would entitle the state to try to rehabilitate Topps' credibility as a witness by conducting a full inquiry into the circumstances of the other assault. This would in turn lead to extrinsic evidence by both parties concerning the prior incident and could conceivably bring up other prior incidents between Richey and Topps. Judge Ripley reasoned that the prior recantation, once fully explained, would likely be of little probative value. The judge concluded that the potential for distraction and confusion outweighed the probative value of the evidence, justifying exclusion under Alaska Rules of Evidence 403 and 404(b).

Judge Ripley's conclusion would likely have amounted to error if Richey had actually been prepared to accept a full inquiry into the prior false report, since a party generally has the right to show that a complaining witness has made false claims against the party under oath in the past. *See, e.g.,* 3A J. Wigmore, *Evidence* §§ 956–63 (Chadbourn rev. ed. 1970). *See also Covington v. State,* 703 P.2d 436, 441–42 (Alaska App.1985), *modified on other grounds,* 711 P.2d 1183 (Alaska App.1985). Our review of the record nevertheless convinces us that Richey's interest in pursuing cross-examination on the issue was far from unconditional.

In response to the state's motion to preclude inquiry into the prior false report by Topps, Richey's trial counsel initially stated: "I do propose not to go into the facts behind it...." Upon inquiry by the trial court, defense counsel clarified this statement in the following manner:

> I think the relevance of the fact is that she in the past has made false police reports. *The relevance I do not think has to do the—she made them concerning the same person or the same alleged type of conduct. I don't believe that that's relevant. The mere fact that she has admitted lying to police officers in the past is all I seek to admit* and I believe under Rule 404(a)(2), that

has to do with the character of a victim, evidence of a relevant trait of character of the victim. This clearly is not something that is questionably related to her truthfulness or honesty. *It clearly shows her character for truthfulness or honesty and her credibility is in issue.* I don't believe—I believe by my limitation of the questions, Your Honor, that we are avoiding the problem of distracting the jury. We are not getting into unrelated collateral matters. *What we don't want to do here today is have a trial consisting of who knows how many different allegations and having tenuous and collateral witnesses come in and support and deny each of those accusations.* We would like to focus on the incident that's alleged in the indictment and *I believe the only reason the information is necessary is to show that on—she has lied in the past, period.* I believe that that's admissible under 613. It shows evidence of bias or interest. Under Criminal Rule 404(b)(2), Your Honor, I would say that this might be characterized as another wrong act and should be admissible for purposes of proof of her motive or opportunity or intent in this proceeding. Therefore, I agree with [the prosecutor] that the prior allegations, prior instances of assaultive behavior of that nature should be excluded under the general character evidence rule. However, I believe the fact that she gave a false police report in the past must be admitted as impeachment of her character. [Emphasis added.]

While defense counsel was perhaps somewhat uncertain of a precise legal theory, this argument plainly establishes that counsel was interested in conducting cross-examination into the prior report only if inquiry could be restricted to the fact that a false report had been made, without any explanation of the underlying circumstances. In precluding cross-examination on the issue, Judge Ripley quite corectly recognized that, if Richey's counsel were permitted to inquire concerning the fact of a prior report in order to establish bias or to impeach credibility, the state would be enti-

tled to rehabilitate Topps' testimony by eliciting a full explanation of the underlying circumstances. Not surprisingly, a full explanation appears to be the last thing Richey's trial counsel wanted.

■ Admittedly, the trial judge should probably have taken greater care to explain more fully the assumptions on which his ruling was based. Nevertheless, we believe the record to be sufficiently unambiguous to establish that Richey's interest in inquiring into the prior report was contingent on the trial court's willingness to limit such inquiry. Had the trial court permitted Richey to cross-examine Topps about the prior false report, while allowing the state to elicit a full explanation on redirect examination—a ruling which, we believe, would have been entirely proper—it is manifest that Richey's counsel would not have cross-examined on the issue. We therefore conclude that the trial court's order excluding inquiry into the prior false report did not amount to reversible error.

■ Richey next challenges the trial court's rejection of his proposed transitional instruction, which would have permitted the jury to consider and decide Richey's guilt on a lesser-included offense without first unanimously agreeing to acquit on the greater offense. Judge Ripley's denial of Richey's proposed transitional instruction is in accord with this court's ruling in *Dresnek v. State*, 697 P.2d 1059 (Alaska App. 1985), *petition for hearing granted* (Alaska, September 16, 1985). We find no error.

Richey separately challenges the validity of his sentence. He first maintains that the sentencing court erred in finding that he had previously been convicted of a felony and was therefore subject to presumptive sentencing. The underlying circumstances are not in dispute. In 1977, Richey was convicted of forgery, in violation of former AS 11.25.020(1). Superior Court Judge Mark Rowland initially suspended the imposition of Richey's sentence for a period of three years. In 1979, however,

after determining that Richey had violated the conditions of his probation, Judge Rowland revoked probation and sentenced Richey to serve five years, suspending two and one-half years of the term. Subsequently, Richey again apparently violated the conditions of his probation, and Judge Rowland imposed the balance of the suspended sentence. On October 9, 1980, however, Judge Rowland, apparently by oversight, entered orders discharging Richey from probation and setting aside his 1977 forgery conviction. Richey's claim that he should not have been treated as a second felony offender relies on Judge Rowland's set-aside order.

■ We believe it apparent that Judge Rowland's set-aside order did not affect the status of Richey's 1977 forgery conviction. The order must be deemed a nullity because Judge Rowland had no authority to issue it. Alaska Statute 12.55.085(d) and (e) provide, in relevant part:

> If the court has not revoked the order of probation and pronounced sentence, the defendant shall, at the end of the term of probation, be discharged by the court.
>
> (e) Upon the discharge by the court without imposition of sentence, the court may set aside the conviction and issue to the person a certificate to that effect.

The plain language of this provision authorizes the sentencing court to set aside a conviction only when a defendant, following a term of probation incidental to a suspended imposition of sentence, has been discharged from probation "without imposition of sentence." The obvious intent of the provision is to allow set-aside orders to be entered only in cases where a sentence has never formally been imposed against the defendant.[1] Here, it is undisputed that, before purporting to enter the set-aside order, Judge Rowland had already rescinded Richey's suspended imposition of sentence and had formally imposed sentence. Richey was never discharged from

---

1. As we held in *Mekiana v. State,* 707 P.2d 918, 920–21 (Alaska App.1985), it is reasonably clear, in context, that the legislature intended set-aside orders to be granted or denied contemporaneously with orders of discharge following successful completion of a period of probation.

probation under AS 12.55.085(d). Judge Rowland therefore had no authority to set aside his conviction under AS 12.55.085(e).

■ Richey next maintains that Judge Ripley erred in rejecting two proposed mitigating factors: that Richey's offense was committed under some degree of duress (AS 12.55.155(d)(3)), and that Richey acted with serious provocation (AS 12.55.155(d)(6)). With respect to both mitigating factors, however, Judge Ripley's decision appears to have been based largely on credibility grounds. In short, Judge Ripley accepted Topps' version of the offense as credible, rejecting Richey's explanation of his motivation in committing the assault. Upon review of the sentencing record, we conclude that Judge Ripley's rejection of the proposed mitigating factors was not clearly erroneous. *Juneby v. State*, 641 P.2d 823, 834 (Alaska App.1982), *modified on other grounds*, 665 P.2d 30 (Alaska App.1983).

■ Finally, Richey argues that his adjusted presumptive term of six years, with two years suspended, is excessive. Judge Ripley's adjustment of the presumptive term was based on his conclusion that the state had established the existence of one aggravating factor: that Richey committed the offense against a member of the household in which he resided (AS 12.55.155(c)(18)). Richey contends that, in deciding to adjust his presumptive term in light of this aggravating factor from four years to six years, with two years suspended, Judge Ripley misapplied the sentencing criteria set out in *State v. Chaney*, 477 P.2d 441, 446 (Alaska 1970). We find no merit to this contention. Judge Ripley properly considered all of the applicable sentencing criteria. His determination of the priority and relationship of the sentencing goals is subject to reversal only if clearly mistaken. *Asitonia v. State*, 508 P.2d 1023, 1026 (Alaska 1973). Having independently reviewed the entirely of the sentencing record, we find that the sentence imposed by Judge Ripley is not clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

The conviction and sentence are AFFIRMED.

COATS, J., not participating.

SINGLETON, Judge, dissenting.

I agree with the court's handling of most of the issues in this case. I cannot agree, however, with its conclusion that Richey's defense counsel abandoned his right to cross-examine Rosenda Topps regarding a prior admittedly false accusation against Richey. I therefore dissent from the court's decision to affirm.

Richey's counsel was forced to make a number of split-second decisions in properly interpreting her obligations under Alaska Evidence Rule 103 when faced with the state's application for an order *in limine*, or protective order, in reliance on Alaska Evidence Rule 403. At the outset, it should be recognized that the Alaska Evidence Rules and the Federal Rules of Evidence upon which they are based do not specifically provide for orders *in limine* or protective orders regarding evidence. *See, e.g.*, C. Wright and K. Graham, *Federal Practice and Procedure: Evidence* §§ 5037 at 194 (1977). Thus, counsel's precise obligations in order to avoid a waiver or forfeiture under Evidence Rule 103 are not clearly defined. This problem is complicated further by the fact that a request by the prosecution that the trial court exercise discretion to exclude evidence under Alaska Rule of Evidence 403, may not qualify as an objection under Evidence Rule 103. *See* C. Wright and K. Graham, *Federal Practice and Procedure: Evidence* § 5036 at 176 (1977).

As I construe the record, the prosecution sought a protective order precluding Richey from cross-examining Topps regarding the fact that she previously accused him of a similar assault and later retracted her claim under oath, conceding that she had lied. The trial court granted the prosecution a protective order barring this evidence relying on Alaska Evidence Rules 403 and 404. The trial court reasoned that the prior accusation and retraction, if ex-

plained, would be of little probative value and would be outweighed by confusion of the issues, *i.e.*, requiring the jury, in effect, to try the prior assault which would lead to undue extension of the trial. The majority seems satisfied that the trial court erred. *See Covington v. State*, 703 P.2d 436 (Alaska App.1985), *modified on other grounds*, 711 P.2d 1183 (Alaska App.1985). A party has a right to show that a witness appearing against him has made false claims under oath in the past. *See, e.g.*, 3A J. Wigmore, *Evidence* §§ 956–63 (Chadbourn rev. ed. 1970). Since Richey was prepared to limit his offer to cross-examination of the witness, the issues would not be unduly confusing nor the case unreasonably prolonged. *Id.* § 981 at 838.

I do not understand that the majority disputes any of these principles of law. What the majority finds troubling is defense counsel's response to the trial court's tentative ruling barring cross-examination on the basis that it would unduly prolong the trial. Defense counsel, in responding to the state's motion for protective order, did indicate that she planned to limit her inquiry to the fact of the false statement in the hopes of keeping the surrounding circumstances out of evidence. Judge Ripley correctly pointed out that if the issue came up, the state would have the right to inquire further of the witness to explain away the inference that, because the witness made a false statement in the past, her statements at trial were untruthful.

*See* 3A J. Wigmore, *Evidence* § 952 at 798 (Chadbourn rev. ed. 1970). The state vigorously argues on appeal that the dialogue between Judge Ripley and counsel for the state and counsel for the defense, constituted an implied waiver of Richey's right to cross-examine, or, at the very least, indicated that defense counsel's intent to cross-examine the witness about her false statement was conditioned on the court's precluding the state from inquiring further about the surrounding circumstances. Were I convinced that the defense, in fact, made a conditional offer, and withdrew her offer when the condition was rejected, I would join in the court's decision to affirm. I do not believe, however, that a fair reading of the record supports such a conclusion. I agree that Judge Ripley was correct in his assumption that if the defendant went into the issue, the state was entitled to attempt to rehabilitate Topps on redirect examination.[1]

I do not believe that this record will support a finding of "waiver" or abandonment by defense counsel. It may be proper to speak of "waiver" of an objection or of an offer where, after it is made, the party explicitly withdraws it or fails to press for a ruling. C. Wright and K. Graham, *Federal Practice and Procedure: Evidence* § 5039 at 200 (1977). It might also be appropriate to speak of an abandonment where by stipulation the parties lead the trial court to believe that there is no issue in controversy. *See, e.g., Stiegele v. State*,

---

1. I would stress, however, that there are limitations on the right to explain. As Wigmore points out, only an explanation is proper. Anything beyond an explanation is irrelevant, and further:

> When to a witness is imputed hostility to the opponent, the true process of explanation consists in showing that the facts offered do not really indicate the conclusion suggested, *i.e.*, the hostility. Thus, when the counter-evidence does not attempt to do this, but admits the hostility and desires to show that it was *justifiable by the opponent's conduct*, the offer is improper in two ways, first, because it does not at all explain away, but concedes that hostility exists, and, secondly, because it tends to prejudice unfairly the cause of the opponent by showing him to be an unjust man. [Emphasis in original.]

3A J. Wigmore, *Evidence* § 952 at 799–800 (Chadbourn rev. ed. 1970). In this case, the defendant's theory appears to be as follows:

(1) the witness accused Richey in the past;
(2) the accusation was false;
(3) the witness knew the accusation was false and recanted; and, therefore,
(4) the jury should disbelieve her in this case.

On re-direct the state would be allowed to challenge this theory by showing, *e.g.*, that the prior accusation was not false and that the retraction was not motivated by the witness's desire to set the record straight. It would not be permitted to show that, true or false, Topps was justifiably afraid of Richey or had good cause to malign him.

714 P.2d 356, 360–361 (Alaska App., 1986). In the instant case, however, Judge Ripley unquestionably ruled on the issue and granted the state's motion for an order *in limine.* It is equally beyond question that Judge Ripley did not view Richey's offer as conditional in any way and did not treat the offer as withdrawn. Judge Ripley understood counsel and was not mislead in any way. Under the circumstances, the finding of abandonment simply is not supported by the record.

Since the trial court's erroneous ruling limited cross-examination of the state's chief witness, we are obligated to reverse unless we can find that the error was harmless beyond reasonable doubt. *See Evans v. State,* 550 P.2d 830, 840–41 (Alaska 1976); *Jackson v. State,* 695 P.2d 227, 230–31 (Alaska App.1985). While the majority seems to suggest that cross-examination if pursued would have been more harmful than helpful to Richey, I do not believe we can say with any confidence that restrictions on cross-examination were harmless beyond a reasonable doubt. I would therefore reverse the decision of the trial court and grant Richey a new trial.