**Roger RATLIFF, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–3167.**

Court of Appeals of Alaska.

Oct. 5, 1990.

Marcia E. Holland, Asst. Public Defender, Fairbanks, and John B. Salemi, Public Defender, Anchorage, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Dwayne W. McConnell, Atty. Gen., Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS, J., and ANDREWS, District Court Judge.*

## OPINION

BRYNER, Chief Judge.

Roger Ratliff was convicted by a jury of second-degree murder. Superior Court Judge Jay Hodges sentenced Ratliff to a term of thirteen years with three years suspended and ordered him to pay restitution in the amount of $8,200. Ratliff appeals, contending that the evidence at trial was insufficient to support his conviction for murder. Ratliff also contends that his sentence is excessive and that the order requiring him to pay restitution was improperly entered.. We affirm the conviction and sentence, but vacate the restitution order and remand for further proceedings.

At about 6:30 p.m. on the evening of January 6, 1989, Ratliff left a friend's house in Fairbanks to drive home. He had been drinking and smoking marijuana and was intoxicated. As Ratliff drove along the Old Richardson Highway, his car was weaving; at times it swerved entirely into the wrong lane. Ratliff forced one oncoming car completely off the road and into a snowbank. Another oncoming car veered almost off the road in order to avoid a head-on collision.

Ratliff then entered the wrong side of the New Richardson Highway, a limited access four-lane divided highway. As he drove west onto the highway via an off-ramp, Ratliff passed two pairs of large warning signs posted on either side of the road. The first cautioned: "DO NOT ENTER." The second said: "WRONG WAY."

After entering the wrong side of the highway, Ratliff drove west along the center eastbound lane. He continued to weave and at one point almost swerved off the road onto the unpaved area dividing the east- and westbound lanes. Ratliff drove at speeds exceeding the fifty-five miles per hour limit.

Several oncoming cars in Ratliff's lane swerved to avoid a collision and flashed their lights to get Ratliff's attention. Two other motorists followed behind on the westbound side of the highway and also attempted to attract Ratliff's attention. As Ratliff passed the oncoming traffic that veered out of his lane, he would apply his brakes but then resume his normal speed.

Within approximately two miles of entering the wrong side of the highway, Ratliff rounded a bend and collided head-on with another car, killing its driver.

Ratliff was not seriously injured. Following the collision, he attempted to restart his engine. When a bystander removed the

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

keys to prevent Ratliff from moving, Ratliff became threatening and abusive. Ratliff was belligerent and uncooperative. He denied drinking. A blood alcohol test taken at the hospital approximately an hour and fifteen minutes later, however, revealed a blood alcohol level of .252 percent.

The state subsequently charged Ratliff with murder in the second degree, in violation of AS 11.41.110(a)(2). Under that provision, second-degree murder occurs when a person "knowingly engages in conduct that results in the death of another person under circumstances manifesting extreme indifference to the value of human life." Before his case was submitted to the jury, Ratliff moved for a judgment of acquittal, arguing that the evidence was insufficient to prove second-degree murder and that, at most, it established that he acted recklessly and was guilty of manslaughter. After his motion was denied, Ratliff argued to the jury that he was guilty of only manslaughter or criminally negligent homicide, but not second-degree murder. The jury found Ratliff guilty as charged.

▌ On appeal, Ratliff renews his claim that the evidence was insufficient to establish second-degree murder. In so doing, Ratliff dwells on evidence that is favorable to his view of the case. It is well settled, however, that in determining the sufficiency of the evidence, this court must view the record and the inferences arising therefrom in the light most favorable to the state; the evidence is sufficient as a matter of law if reasonable jurors could find the defendant's guilt established by proof beyond a reasonable doubt. *See, e.g., Deal v. State,* 657 P.2d 404, 405 (Alaska App.1983); *Beck v. State,* 408 P.2d 996, 997 (Alaska 1965).

The second-degree murder provision under which Ratliff was convicted required proof that Ratliff knowingly engaged in conduct resulting in death to another person and that his conduct was performed "under circumstances manifesting extreme indifference to the value of human life." AS 11.41.110(a)(2). We have previously interpreted the "extreme indifference" language of this provision as the equivalent of extreme recklessness. *Neitzel v. State,* 655 P.2d 325, 331–38 (Alaska App.1982).

In *Neitzel,* relying on commentary to the Model Penal Code, we identified four factors to consider in differentiating the ordinary criminal recklessness in manslaughter from the aggravated recklessness embodied in the "extreme indifference" provision of the second-degree murder statute: (1) The social utility of the actor's conduct, (2) the magnitude of the risk, (3) the actor's awareness of the risk, and (4) precautions taken by the actor to avoid the risk. *Id.* at 336–37.

Three of the four *Neitzel* factors unquestionably weigh in favor of concluding that Ratliff's conduct amounted to the type of extreme recklessness contemplated by the second-degree murder provision. First, as we recognized in *Neitzel,* 655 P.2d at 337, the social utility of drunken driving is marginal, at best. Second, the danger inherent in Ratliff's conduct was extreme. The risk created by a drunk driver travelling at 55 to 60 miles per hour at night on the wrong side of a well-travelled divided highway readily approaches the order of risk involved in a game of Russian roulette. Certainly, the risk exceeds the type of risk commonly involved in criminal recklessness. *See, e.g., United States v. Fleming,* 739 F.2d 945 (4th Cir.1984). Third, the uncontradicted evidence in this case establishes that Ratliff took virtually no precautions to avoid this risk.

The only remaining *Neitzel* factor is Ratliff's awareness of the risk. Ratliff relies on this factor in pressing his claim of insufficient evidence. He contends that the evidence in his case failed to establish his awareness of the risk that his driving created. Ratliff cites the two prior cases in which we have considered and upheld second-degree murder convictions arising out of drunken driving incidents: *Pears v. State,* 672 P.2d 903 (Alaska App.1983), *rev'd on other grounds,* 698 P.2d 1198 (Alaska 1985); and *Stiegele v. State,* 714 P.2d 356 (Alaska App.1986).

Ratliff points out that in both *Pears* and *Stiegele* the evidence established that others had expressly warned the defendant

about the risk created by his conduct. Ratliff maintains that there is no evidence of comparable warnings in this case, and he argues that, in the absence of such evidence, there is no basis for finding the extreme recklessness necessary to support a conviction for second-degree murder.

Again, however, Ratliff bases his argument on a view of the evidence that is distinctly favorable to his theory of the case. The jury in this case was not bound to accept Ratliff's version of events. In particular, it was free to reject Ratliff's claim that he did not know he was on the wrong side of the highway and was unaware of the efforts made by other persons to alert him to the danger that he posed.

The evidence at trial established that Ratliff elected to drive after consuming enough liquor to elevate his blood alcohol content to two and one-half times the legal limit. He was weaving and swerving across the entire roadway even before entering the New Richardson Highway. His erratic driving forced at least two cars to take evasive action, one of which drove completely off the road into a snowbank. Ratliff then drove onto the wrong side of the Richardson Highway via on off-ramp that was conspicuously marked by two separate pairs of warning signs. Before becoming involved in the fatal collision, Ratliff encountered at least four oncoming cars that were travelling in his lane of traffic and were forced to take evasive action to avoid collision. These cars attempted to alert him to the situation. At the same time, other cars, travelling on the correct side of the highway, followed in Ratliff's wake and similarly attempted to signal him.

■ Viewing this evidence in the light most favorable to the state, reasonable jurors could easily have concluded that Ratliff actually knew of his situation but elected to proceed on the wrong side of the road. There was ample evidence presented from which the jury could find that Ratliff was placed on actual notice that his conduct created an exceptionally high level of risk. The evidence of actual notice in this case is at least comparable to that present-

ed in *Pears* and *Stiegele*. Although this evidence is arguably somewhat less compelling here than in *Pears* and *Stiegele*, the weight and credibility of evidence are matters for the jury to consider in reaching a verdict, not for the reviewing court to decide in ruling on the legal sufficiency of the evidence. *See, e.g., Anthony v. State,* 521 P.2d 486 (Alaska 1974).

■ Neither *Pears* nor *Stiegele* purport to require evidence of an express verbal warning as a precondition of "extreme indifference" homicide. As our decision in *Neitzel* makes clear, the defendant's awareness of the risk is but one of several factors to consider in deciding whether the evidence establishes recklessness or extreme recklessness. The ultimate question in each case is whether the totality of evidence supports a rational conclusion that extreme recklessness was proven beyond a reasonable doubt. Here, the evidence, when viewed in the light most favorable to the state, is sufficient to support such a conclusion. Accordingly, the trial court did not err in denying Ratliff's motion for a judgment of acquittal.

■ Ratliff next argues that his sentence of thirteen years with three years suspended is excessive. He compares himself favorably to the defendant in *Pears,* who was convicted of second-degree murder for a drunken driving homicide in which two people were killed and one seriously injured. Ratliff asserts that the Alaska Supreme Court's decision in *Pears v. State,* 698 P.2d 1198 (Alaska 1985), held that Pears' sentence should not have exceeded ten years in prison. Ratliff would thus have us read *Pears* as essentially placing a ten-year cap on sentences for first felony offenders convicted of vehicular homicides. He bolsters this contention by citing this court's decision in *Jones v. State,* 744 P.2d 410 (Alaska App.1987). *But see id.* at 414 (Singleton, J., concurring); *id.* at 415–16 (Bryner, C.J., dissenting) (both opinions rejecting the assertion that the supreme court had established a ten-year ceiling on drunken driving reckless murder convictions). Ratliff maintains that, since his conduct was less serious

than Pears' conduct, he deserved a significantly lower term than the ten-year limit prescribed by the court in *Pears*.

Ratliff also criticizes the sentencing court for relying on the fact that he was convicted of second-degree murder rather than manslaughter. He argues that *Pears* requires his case to be treated similarly to cases involving offenders convicted of drunken driving manslaughter. According to Ratliff, offenders who have been convicted of manslaughter for comparable conduct have received lower sentences than his.[1] In Ratliff's view, lengthier terms have been imposed only in cases involving multiple deaths, offenders with multiple driving while intoxicated convictions, or both.[2]

Ratliff's reliance on the supreme court's decision in *Pears* is partially justified. The supreme court, in *Pears*, did emphasize the appropriateness of using drunken driving manslaughter cases as a point of reference for determining an appropriate sentence for an offender convicted of second-degree murder for comparable conduct. In so doing, the supreme court rejected the notion that a drunken driver who is convicted of second-degree murder should receive a significantly greater sentence than a drunken driver convicted of manslaughter merely because the conviction was for a more serious class felony. *Pears*, 698 P.2d at 1203–04. *Pears* thus counsels the importance of relying on the facts of each case, rather than the statute under which the defendant was prosecuted, in determining an appropriate sentence.

■ Nevertheless, nothing in *Pears* requires the sentencing court to blind itself entirely to the fact than an offender is found guilty of murder rather than manslaughter. The conduct of a drunken driver who is convicted of second-degree murder on the basis of extreme recklessness will typically be among the most serious within the class of vehicular homicides. This is certainly a factor that the sentencing court is entitled to consider. In the present case, the sentencing court did precisely that.

Judge Hodges viewed Ratliff's conviction for second-degree murder as a significant reflection of the seriousness of Ratliff's conduct. However, the judge did not give that factor overriding or disproportionate significance; nor did Judge Hodges enhance Ratliff's sentence merely because he had been convicted of a more serious class of crime than manslaughter. Comparing Ratliff's conduct to Pears', Judge Hodges found certain aspects more aggravated and certain aspects less aggravated. The record supports these findings. On the one hand, Pears had been expressly warned not to drive, his recklessness was arguably more willful and flagrant than Ratliff's, and it resulted in two deaths and one injury. On the other hand, Ratliff was significantly more intoxicated than Pears, and his reckless driving appears to have actually endangered a significantly greater number of motorists.

■ In imposing Ratliff's sentence, Judge Hodges also properly considered that Ratliff had one prior DWI conviction, as well as other prior misdemeanor convictions, including a recent assault for which Ratliff was still on probation. Ultimately, Judge Hodges found Ratliff's conduct to be comparable in seriousness to Pears'. This finding is not clearly erroneous. The sentence that Judge Hodges imposed fell within the range approved in other aggravated vehicular homicides and was commensurate with the sentence imposed on remand in

---

1. In particular, Ratliff cites *St. John v. State*, 715 P.2d 1205 (Alaska App.1986) (defendant sentenced to presumptive term of five years upon conviction of manslaughter and assault following a collision that occurred when the defendant drove while intoxicated down the wrong side of a divided highway with his lights off). *See also Krasovich v. State*, 731 P.2d 598 (Alaska App.1987).

2. *See, e.g., Rosendahl v. State*, 591 P.2d 538 (Alaska 1979) (ten years for hit and run driver with two prior DWIs); *Sandvik v. State*, 564 P.2d 20 (Alaska 1977) (twenty years with eight years suspended for hit and run driver with six prior DWIs); *Layland v. State*, 549 P.2d 1182 (Alaska 1976) (eight years for a defendant with two prior DWIs); *Gullard v. State*, 497 P.2d 93 (Alaska 1972) (ten years for a driver with two prior DWIs who killed four persons).

*Pears.* Having independently reviewed the sentencing record, we conclude that the sentence imposed below was not clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).[3]

■ Ratliff lastly contends that the sentencing court erred in ordering him to pay restitution. Restitution is governed by AS 12.55.045(a). The original version of that provision required the sentencing court to make an affirmative finding that the defendant possessed the ability to pay restitution. *See, e.g., Karr v. State*, 686 P.2d 1192, 1196–97 (Alaska 1984); *Lawrence v. State*, 764 P.2d 318, 322 (Alaska App.1988). Shortly before Ratliff's offense, however, the legislature amended AS 12.55.045(a). The amended version creates a rebuttable presumption that the defendant is financially capable of paying restitution and places the burden of rebutting the presumption on the defendant. In its current form, the statute provides:

(a) The court may order a defendant convicted of an offense to make restitution as provided in this section, including restitution to the victim, to a public, private, or private nonprofit organization that has provided counseling, medical, or shelter services to the victim, or as otherwise authorized by law. A defendant is presumed to have the ability to pay restitution unless the defendant establishes the inability to pay by a preponderance of the evidence. In determining the amount and method of payment of restitution, the court shall take into account the

(1) public policy that favors requiring criminals to compensate for damages and injury to their victims;

(2) financial burden placed on the victim and those who provide services to the victim as a result of the criminal conduct of the defendant; and

(3) financial resources of the defendant and the nature of the burden its payment will impose on dependents of the defendant.

AS 12.55.045(a), *as amended by* ch. 75 §§ 1, 2, SLA 1988.

Ratliff did not present any evidence to establish that he was incapable of paying restitution. Apparently relying on the amended version of AS 12.55.045(a), Judge Hodges ordered $8,200 in restitution without any inquiry into Ratliff's financial situation and without any findings to justify the restitution order. On appeal, Ratliff argues that the court erred. Ratliff contends that, even in its amended form, the restitution statute requires the court to make express findings justifying a restitution order.

The state confesses error on this issue in its brief. The state's confession is based on a thoughtful and cogent interpretation of AS 12.55.045(a). The position taken by the state bears repetition here:

AS 12.55.045(a) identifies three factors which the judge must "take into account" "[i]n determining the amount and method of payment of restitution":

(1) public policy that favors requiring criminals to compensate for damages and injury to their victims;

(2) financial burden placed on the victim and those who provide services to the victim as a result of the criminal conduct of the defendant; and

(3) financial resources of the defendant and the nature of the burden its

3. Ratliff has separately argued that Judge Singleton's concurring opinion in *Jones v. State*, 744 P.2d 410, 414 (Alaska App.1987), requires that a sentence in excess of five years for vehicular manslaughter must be justified by an express finding of necessity to isolate the defendant for the protection of the community. Ratliff points out that Judge Hodges relied on deterrence and community condemnation as the primary sentencing goals in this case. He contends that, under *Jones*, these sentencing factors cannot justify the lengthy term that he received.

This argument is without merit. Judge Singleton's views in *Jones* were expressed in the context of consecutive sentences exceeding the presumptive term for manslaughter. They did not relate to crimes involving extreme recklessness. Furthermore, Judge Singleton's views did not reflect the views of the majority of the court. Indeed, in subsequent cases, this court has unanimously declined to hold that isolation is the only sentencing factor that will justify lengthy consecutive sentences. *See, e.g., Farmer v. State*, 746 P.2d 1300 (Alaska App.1987).

payment will impose on dependents of the defendant.

Nothing in the record indicates that Judge Hodges considered these three factors, or anything else, in deciding that Ratliff should pay $8,200 in restitution.... Under these circumstances, Ratliff is correct that the issue of restitution must be remanded so that the judge can reconsider it in light of the statutory requirements. *See Karr v. State,* 686 P.2d 1192, 1196–97 (Alaska 1984), and its progeny.

When the judge reconsiders the issue, he must do so under the current version of AS 12.55.045(a), as amended effective August 25, 1988, since Ratliff committed his offense after that date. Among the amendments made in 1988 was the addition of the following sentence: "A defendant is presumed to have the ability to pay restitution unless the defendant establishes the inability to pay by the preponderance of the evidence."

In *Karr,* the supreme court held that, before imposing restitution, the sentencing judge must make a "serious inquiry" into the defendant's ability to pay. 686 P.2d at 1197. The 1988 statutory amendment did not overrule this holding. The 1988 amendment did two things of relevance to this case. First, it shifted the burden of proof on the issue of ability to pay. Second, it added additional factors which the judge must take into account: the public policy in favor of restitution, the financial burden which the offense placed on the victim, and the burden which a restitution order would place on the offender's dependents. The inquiry into these additional factors should be as "serious" as the inquiry as to the defendant's ability to pay.

This case must be remanded with instructions to the superior court to conduct that "serious inquiry" into all the factors now identified in the restitution statutes.

We agree with the state's interpretation of AS 12.55.045(a), and with its conclusion that the sentencing court erred in failing to make appropriate findings in this case. Accordingly, the restitution order must be vacated, and Ratliff's case must be remanded for further findings on the issue of restitution.[4]

The conviction is AFFIRMED. The sentence is AFFIRMED in part and VACATED in part. This case is REMANDED for further proceedings consistent herewith.

---

**4.** Ratliff additionally contends that the court erred in ordering restitution to reimburse the victim's husband for air fare that he paid to enable his children to travel to Alaska for the funeral. Ratliff contends that reimbursement of air fare goes beyond the proper scope of restitution. *See* AS 12.55.100(a)(2) (limiting restitution payments to "aggrieved parties for actual damages or loss caused by the crime for which conviction was had"). This issue was not argued below and has been presented for the first time on appeal. Because we must remand for reconsideration of the restitution order, we find it preferable for the parties to argue the issue in the sentencing court and to allow that court to rule on it in the first instance.