Jack E. MORRELL, Appellant,

v.

STATE of Alaska, Appellee.

No. A–9847.

Court of Appeals of Alaska.

Sept. 25, 2009.

---

Renee McFarland, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Nancy R. Simel, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

*OPINION*

BOLGER, Judge.

Jack E. Morrell killed Eric Kalenka by stabbing him several times in the leg outside of a Taco Bell restaurant. We conclude that there was sufficient evidence to support Morrell's resulting conviction for second-degree murder. We also conclude that the trial judge did not abuse his discretion by admitting evidence that Morrell had smoked marijuana and had four ounces of marijuana in his vehicle. We further conclude that Morrell's sentence of 60 years' imprisonment with 10 years suspended was not clearly mistaken.

### Background

Erik Kalenka and his girlfriend, Christine Giles, went to the drive-through at the Taco Bell on Fifth Avenue after a night of playing video games. Jack Morrell and his cousins, Paul and William Wassili, also went to the Taco Bell after spending four to five hours drinking at Chilkoot Charlie's.

While Kalenka and Giles were waiting in the drive-through line, Morrell's Chevy Suburban struck the rear bumper of Kalenka's rented Subaru. Kalenka got out of the Subaru to assess the damage and asked Morrell to move the Suburban so that Kalenka could see the back of his car. Morrell refused to move, saying something to the effect of "Why are you white people always fucking with us Natives?" Kalenka responded by pulling out his phone and dialing 911.

The encounter then escalated: Morrell grabbed Kalenka by the collar and shoved him against the Subaru. Kalenka stated that he did not want to fight—he just wanted Morrell's information because the Subaru was a rental. The fight continued as Morrell produced a folding knife from his pocket and punctured the Subaru's rear tire. Paul and William Wassili exited the Suburban, and Claude Doucet, the driver of the car behind the Suburban, also got out of his vehicle.

The fight continued to escalate, and Morrell and Kalenka began to roll around on the ground. Then Kalenka screamed that he had been stabbed, and Doucet and William Wassili pulled Morrell off Kalenka. Kalenka,

who was bleeding and having trouble walking, got back into the Subaru and asked Giles to get an ambulance. While Giles was speaking with the 911 operator, Kalenka became unresponsive and then died.

Medical Examiner Frank Fallico conducted the autopsy. Fallico testified that Kalenka died from multiple stab wounds: Kalenka suffered seven stab wounds to the left leg and one stab wound to the upper portion of his right leg, near the groin area. Fallico testified that one of the wounds, a stab wound above the knee on the left side of Kalenka's left leg, had been rapidly fatal because it nicked the popliteal artery, an extension of the femoral artery. Fallico also testified that Kalenka had wounds to his hands and face.

Morrell was indicted for second-degree murder [1] and first-degree robbery (for allegedly taking Kalenka's wallet).[2] Morrell claimed self-defense at trial, arguing that although Morrell started the fight, Kalenka escalated the fight, using deadly force by putting Morrell in a headlock, making it difficult for him to breathe.

The State presented evidence of marijuana metabolite in a blood sample taken from Morrell on the morning after his arrest, and evidence that there were over four ounces of marijuana found in his car. At trial, Morrell argued that the marijuana evidence should not be admitted, but the trial court denied his motion and admitted the evidence.

The jury acquitted Morrell on the robbery charge but rejected his self-defense claim and convicted him of second-degree murder. Finding that Morrell's crime was an atypically serious second-degree murder, Superior Court Judge Eric A. Aarseth sentenced Mor-

rell to 60 years' imprisonment with 10 years suspended.

### Sufficiency of the Evidence

Morrell argues that insufficient evidence was presented to the jury to support his conviction for second-degree murder. When we review the sufficiency of the evidence, we uphold a verdict if any reasonable juror could have concluded that the defendant was guilty beyond a reasonable doubt.[3] We do not weigh the evidence or witness credibility;[4] we consider only those facts in the record most favorable to the verdict and such reasonable inferences as a jury may have drawn from those facts.[5]

Morrell was charged with second-degree murder under three theories: (1) the serious-physical-injury theory—that he intended to cause serious physical injury to Kalenka or knew that his conduct was substantially certain to result in serious physical injury or death, and his conduct caused Kalenka's death; (2) the extreme-indifference theory—that he engaged in conduct manifesting an extreme indifference to human life, and caused Kalenka's death; and (3) the felony-murder theory—that he caused Kalenka's death during the commission of first-degree robbery.[6]

The jury was not asked to specify which theory it relied upon when it reached a verdict on the murder charge.[7] But the parties agree that the jury did not rely on the felony-murder theory, because the jury acquitted Morrell of the robbery charge. Thus, the jurors must have convicted Morrell under one or both of the other two theories.

In this appeal, Morrell does not contest that there was sufficient evidence to support

---

1. AS 11.41.110(a)(1), (a)(2), and/or (a)(3).

2. AS 11.41.500(a)(1).

3. *Sheldon v. State,* 796 P.2d 831, 839 (Alaska App.1990).

4. *Ratliff v. State,* 798 P.2d 1288, 1291 (Alaska App.1990).

5. *Dorman v. State,* 622 P.2d 448, 453 (Alaska 1981).

6. AS 11.41.110(a)(1) ("with intent to cause serious physical injury to another person or knowing

that the conduct is substantially certain to cause death or serious physical injury to another person, the person causes the death of any person"); AS 11.41.110(a)(2) ("the person knowingly engages in conduct that results in the death of another person under circumstances manifesting an extreme indifference to the value of human life"); and AS 11.41.110(a)(3) (felony murder).

7. *See State v. James,* 698 P.2d 1161, 1163–67 (Alaska 1985).

a conviction under the extreme-indifference theory. But Morrell contends that the State failed to provide sufficient evidence to support conviction under the serious-physical-injury theory.

*Sufficiency of the evidence to support conviction under the serious-physical-injury theory*

Our review of the record convinces us that there was sufficient evidence to support either prong of the serious-physical-injury theory: that Morrell intended to cause serious physical injury, or that Morrell knew his conduct was substantially certain to result in serious physical injury or death.

■ Regarding the first prong of this theory, there was sufficient evidence to show that Morrell intended to cause serious physical injury.[8] The witnesses at the scene and the autopsy evidence established that Morrell stabbed Kalenka repeatedly with a folding knife, an instrument defined by statute as a deadly weapon.[9] The medical examiner testified that Kalenka had eight penetrating stab wounds on his legs. Of these wounds, one was "lethal" or "rapidly lethal" and the other seven were referred to as lethal only in the absence of modern medical care. The medical examiner also testified that Kalenka had knife wounds on his hands suggesting that he attempted to ward off Morrell's attack. The jury could have inferred that because Morrell stabbed Kalenka eight times while Kalenka tried to protect himself, Morrell had the conscious objective of causing serious injury to Kalenka.

Additionally, Giles, Kalenka's girlfriend, testified that prior to the fight, Morrell threatened both her and Kalenka. Claude Doucet, an unrelated bystander, testified that Morrell was uttering racist remarks and expletives. Morrell himself testified that he was intoxicated at the time of the encounter and that he was angry at Kalenka for calling 911. Accordingly, the jury could have concluded that Morrell was drunk and agitated, that Morrell intentionally stabbed Kalenka, and that Morrell wanted to hurt Kalenka. Viewing the evidence in the light most favorable upholding the jury's verdict, there is ample evidence that Morrell intended to seriously injure Kalenka.

■ Regarding the second prong of this theory, there was likewise sufficient evidence to show that Morrell knew his conduct was substantially certain to cause death or serious physical injury. In *Huitt v. State*, we clarified that a person could act "knowing that his conduct was substantially certain to cause death" under this statute "without having an intent to kill."[10] There was ample evidence presented at trial from which reasonable jurors could have concluded that Morrell knew that stabbing Kalenka would result in serious physical injury.

Morrell stabbed Kalenka repeatedly with a knife, a weapon that is capable of causing death or serious physical injury. Dr. Fallico, the medical examiner, testified that, notwithstanding the wound to Kalenka's popliteal artery, any of the wounds could have been fatal, particularly if left untreated. Dr. Fallico also testified that stabbing causes bleeding and infection, and that bleeding and infection can cause long-term impairment of health or death. In the light most favorable to upholding the jury's verdict, there was sufficient evidence that Morrell knew of the substantial probability that stabbing Kalenka's legs would cause long-term impairment.

*Sufficiency of the evidence that Morrell was not acting in self-defense*

■ Morrell also argues that the State presented insufficient evidence to rebut his claim of self-defense. Once the defendant produces some evidence of self-defense, the

---

8. "Serious physical injury" is defined by statute as "(A) physical injury caused by an act performed under circumstances that create a substantial risk of death; or (B) physical injury that causes serious and protracted disfigurement, protracted impairment of health, protracted loss or impairment of the function of a body member or organ, or that unlawfully terminates a pregnancy." AS 11.81.900(b)(56).

9. AS 11.81.900(b)(17) provides: "'deadly weapon' means any firearm, or anything designed for and capable of causing death or serious physical injury, including a knife, an axe, a club, metal knuckles, or an explosive."

10. 678 P.2d 415, 420 (Alaska App.1984).

State has the burden of disproving the existence of that defense beyond a reasonable doubt.[11]

However, a person may not use force in self-defense if he is the initial aggressor.[12] In particular, a person who arms himself and provokes a confrontation forfeits the right to claim self-defense.[13] Morrell admits that he was the initial aggressor in this encounter. But he argues that Kalenka used deadly force against him by putting him in a headlock, which gave him the right to use deadly force against Kalenka.[14] Morrell bases his argument almost solely on his own testimony, ignoring the evidence that favors upholding the jury's verdict.

There was ample evidence from which reasonable jurors could have concluded that Kalenka was not threatening Morrell with deadly force at the time Morrell stabbed him. Doucet testified that Morrell was winning the fight at the time he stabbed Kalenka. Doucet also testified that he had to pull Morrell off Kalenka once Kalenka announced he had been stabbed. Similarly, William Wassili told the police that once Kalenka had been stabbed, he had to shove Morrell off Kalenka.

Accordingly, the jury could have reasonably concluded that Morrell was winning the fight and that Kalenka did not pose a deadly threat. Looking at all the evidence in the light most favorable to the jury's verdict, there was sufficient evidence for a reasonable juror to conclude that Morrell did not act in self-defense.

### The Marijuana Evidence

Before trial, Morrell sought to exclude the evidence of the marijuana found in his vehicle and of the marijuana metabolites found in his bloodstream, citing Alaska Evidence Rules 402 and 403. The judge denied Mor-

rell's motion, ruling that the marijuana evidence was probative of Morrell's motive, and that the evidence would not confuse the jury or prompt them to decide Morrell's case based on emotion. We review this decision to admit evidence for an abuse of discretion,[15] that is, whether the judge's decision was "clearly untenable or unreasonable." [16]

We conclude that the trial judge could reasonably decide that the evidence that Morrell possessed marijuana was relevant to the issues in dispute. Morrell admitted that he knew that four ounces of marijuana could subject him to criminal charges. The evidence thus suggested that Morrell was angry about Kalenka's decision to call 911 because he was afraid that the police would discover that he had marijuana in his vehicle. This motive in turn suggested that Morrell intended to hurt Kalenka and that he was not merely acting in self-defense.

In addition, the evidence that Morrell had marijuana metabolites in his system suggested that Morrell may have been under the influence of marijuana when he attacked Kalenka. If Morrell was under the influence, the jury could infer that he was acting unreasonably when he stabbed Kalenka, and that his decision was not based on a reasonable belief that he was required to use deadly force to defend himself. Morrell contends that the State was not able to prove the extent of his intoxication, but that fact goes to the weight, rather than to the admissibility, of this evidence.

When the judge considered the potential prejudicial effect of this evidence, he concluded that the magnitude of the charged offenses—second-degree murder and first-degree robbery—made it unlikely that a jury would be affected by the relatively minor stigma attached to the possession of marijuana. This reasoning was not clearly untena-

---

**11.** *Brown v. State,* 698 P.2d 671, 674 (Alaska App.1985).

**12.** AS 11.81.330(a)(3).

**13.** *Bangs v. State,* 608 P.2d 1, 5 (Alaska 1980); *Toomey v. State,* 581 P.2d 1124, 1126–27 (Alaska 1978).

**14.** *See Castillo v. State,* 614 P.2d 756, 758 (Alaska 1980) (note that this case was decided based on

the law in effect prior to the enactment of the Alaska Revised Criminal Code in 1980).

**15.** *See Hoffman v. State,* 950 P.2d 141, 146 (Alaska App.1997).

**16.** *Lewis v. State,* 469 P.2d 689, 695 (Alaska 1970).

ble. In a similar case, the Arizona Supreme Court found it unlikely that a jury in a murder case would be unfairly swayed by evidence that the defendant had purchased marijuana "[g]iven the gravity of the crime for which defendant was on trial."[17] We likewise conclude that the judge's evidentiary ruling in this case was not an abuse of his discretion.

### Sentence Appeal

■ The trial judge sentenced Morrell to 60 years' imprisonment with 10 years suspended for the second-degree murder conviction. Morrell argues that this sentence is excessive.

■ In *Page v. State*, this court established a range of 20 to 30 years to serve for a typical second-degree murder.[18] "The legal effect of the *Page* benchmark range is that sentencing judges who wish to impose more than 30 years to serve for the crime of second-degree murder must explain why they view the defendant as having a worse background than that of a typical first felony offender, or why they view the defendant's crime as worse than a typical second-degree murder."[19] A sentencing judge may exceed the 20– to 30–year range for any sound reason.[20]

In the instant case, the judge explained that Morrell had guarded prospects for rehabilitation and that his criminal record indicated a significant downward spiral. As the judge noted, the presentence report indicated that Morrell had two strings of convictions. The first, beginning in 1992, included a felony conviction for second-degree burglary and a conviction for third-degree forgery.

The second string, beginning in 2002, included the violation of a domestic violence protective order, two separate convictions for failure to appear, misdemeanor driving while intoxicated, and driving with a suspended license. The presentence report also noted the "eerie" similarities between the facts of the present offense and a traffic incident that escalated into a public disturbance in 2003. The judge observed that Morrell was being simultaneously sentenced for an alcohol importation conviction, and he found that, at the time of Kalenka's murder, Morrell was in possession of marijuana clearly intended for distribution. Because of Morrell's conduct from 2001 leading up to the murder, the judge found that Morrell posed a danger to the public.

Morrell argues that his crime was a typical second-degree murder in comparison to other cases. He relies on cases in which we have affirmed sentences that were not excessive.[21] However, these cases only examined whether sentences within the *Page* benchmark were excessive, not whether the sentencing judges adequately determined that the crimes were typical or atypical second-degree murders. Therefore, these cases only indicate which second-degree murder sentences are not excessive, and "do not stand for the proposition that greater sentences would necessarily have been impermissible."[22]

Morrell also tries to distinguish his crime from one second-degree murder case where we affirmed a 65–year sentence. In *Gustafson v. State*, the defendant was convicted of second-degree murder for shooting the passenger of another car after he became incensed by a minor slight by another driver.[23] Morrell argues that his case is not as serious as Gustafson's crime. But Morrell's case is very similar to one aspect of the *Gustafson* decision: Morrell used a deadly weapon in an

**17.** *State v. Atwood,* 171 Ariz. 576, 832 P.2d 593, 637 (1992) *overruled on other grounds by State v. Nordstrom,* 200 Ariz. 229, 25 P.3d 717 (2001).

**18.** 657 P.2d 850, 855 (Alaska App.1983).

**19.** *Carlson v. State,* 128 P.3d 197, 203 (Alaska App.2006).

**20.** *Id.* at 204.

**21.** *See Arenas v. State,* 727 P.2d 313, 313–15 (Alaska App.1986) (25–year sentence for a shoot-

ing during a bar fight); *Hurn v. State,* 872 P.2d 189, 199–200 (Alaska App.1994). (30–year sentence for a shooting outside a bar); *Jimmy v. State,* 689 P.2d 504, 505–06 (Alaska App.1984) (25–year sentence).

**22.** *Arenas,* 727 P.2d at 314; *see also Hurn,* 872 P.2d at 199–200.

**23.** 854 P.2d 751, 754, 765 (Alaska App.1993).

unprovoked attack in response to a minor and common social disagreement. And as we recognized in *Gustafson*, an unpredictable or inexplicable crime like this one supports a greater focus on the need to reaffirm the community's values and sense of safety.[24] In summary, the judge adequately explained his departure from the *Page* benchmark, and the resulting sentence is not clearly mistaken.

### Conclusion

The State presented adequate evidence for reasonable jurors to conclude beyond a reasonable doubt that Morrell committed second-degree murder and that the State disproved Morrell's claim of self-defense. Morrell has not shown that the trial court abused its discretion by allowing the evidence of marijuana possession and use. And Morrell has not shown that his sentence is excessive.

We therefore AFFIRM the superior court's judgment and sentence.[25]

---

24. *Id.* at 765.

25. We address in a separate opinion Morrell's claim that the judge improperly made his sec-ond-degree murder sentence consecutive to his sentence for importing liquor into a local option area in Case No. 3AN–04–8193 CR.