NOTICE

*The text of this opinion can be corrected before the opinion is published in the*
<u>*Pacific Reporter*</u>. *Readers are encouraged to bring typographical or other*
*formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

DOUGLAS W. CHANEY,

              Appellant,

    v.

STATE OF ALASKA,

              Appellee.

Court of Appeals No. A-13120
Trial Court No. 1JU-17-00900 CR

O P I N I O N

No. 2684 — November 13, 2020

Appeal from the District Court, First Judicial District, Juneau,
Kirsten L. Swanson, Judge.

Appearances: Bruce B. Weyhrauch, Law Office of Bruce B.
Weyhrauch, LLC, Juneau, for the Appellant. Aaron C. Peterson,
Assistant Attorney General, Office of Special Prosecutions,
Anchorage, and Kevin G. Clarkson, Attorney General, Juneau,
for the Appellee.

Before: Allard, Chief Judge, and Wollenberg and Harbison,
Judges.

Judge HARBISON.

Douglas W. Chaney was convicted of fishing with an overlength
commercial salmon seine vessel in violation of AS 16.05.835 and AS 16.05.920(a).
Chaney appeals, contending that there was insufficient evidence to support his
conviction.

He also contends that the regulation defining the term "anchor roller," 5 Alaska Administrative Code (AAC) 39.975(b), is invalid because it is: (1) inconsistent with AS 16.05.835, the statute establishing the maximum allowable length of a vessel participating in the salmon seine fishery; (2) an unnecessary regulation; and (3) unconstitutionally vague. For the reasons explained in this opinion, we affirm the judgment of the district court.

*Statutes and regulations relevant to this appeal*

Alaska Statute 16.05.835 limits the maximum overall length of a vessel participating in the salmon seine fishery to fifty-eight feet. This statute defines the "overall length" of a vessel as "the straight line length between the extremities of the vessel *excluding anchor rollers*."[1] An anchor roller is a device that raises and lowers an anchor. Anchor rollers are excluded from a vessel's length measurement because they must extend beyond the bow far enough to ensure that the anchor does not strike the bow when raised or lowered.

The term "anchor roller" is not defined by statute. Because various structures that extend the overall length of a vessel could be labeled as "anchor rollers," leaving the term undefined made it difficult to regulate the overall length of vessels. Accordingly, in March 2015, the Board of Fisheries adopted a regulation defining "anchor roller."[2]

Under this regulation, which took effect on April 15, 2017, an "anchor roller" is defined as "a device used solely in aid of deploying and retrieving anchor gear and does not provide any additional flotation, planing surface, sea keeping ability,

---

[1]    AS 16.05.835(c) (emphasis added).

[2]    5 AAC 39.975(b).

buoyancy, deck space, or structural support to the vessel."[3]  The regulation ensures that attachments to fishing vessels are included in a vessel's overall length measurement if the attachment provides, among other things, additional deck space or structural support to the vessel.[4]  This is true even if the attachment also supports the actual anchor roller — *i.e.* the "device used solely in aid of deploying and retrieving anchor gear."

Devices used to deploy and retrieve anchor gear are also excluded from a vessel's "overall length" under federal law.  But federal law excludes a much broader array of structures from the definition of "overall length" than does Alaska law.  Federal regulations exclude from the overall length measurement many types of "fittings and attachments" that extend beyond the hull of the vessel.[5]  Accordingly, if an attachment provides "additional flotation, planing surface, sea keeping ability, buoyancy, deck space, or structural support," it would be included when measuring the "overall length" of a vessel under Alaska law but may not be included when measuring the vessel's length under federal law.

*Factual and procedural background of Chaney's case*

The evidence presented to the trial court showed that when Chaney purchased his fishing vessel, the *F/V Pacific Rose*, in 2010, the vessel was fifty-seven and one half feet long when measured under federal regulations.  This measurement excluded an attachment to the bow of the *F/V Pacific Rose* that Chaney described as the vessel's "anchor roller assembly."

---

[3]  *Id.*

[4]  *See id.*

[5]  *See* 46 C.F.R. § 69.203 (excluding rudders, outboard motor brackets, and other similar fittings and attachments from the overall length).

On July 9, 2017, three months after the effective date of the state regulation defining "anchor roller," a state trooper advised Chaney that his vessel was overlength for the salmon seine fishery and would need to be in compliance before Chaney could continue salmon seining. Because the state regulation had recently changed, the trooper did not measure the vessel or cite Chaney for the overlength violation.

On July 25, troopers measured the *F/V Pacific Rose* in Chaney's presence as it was "laying alongside" a breakwater in harbor. According to their measurement, the vessel's overall length was sixty-two and one-half feet. The troopers informed Chaney of this measurement and again told him it was overlength for the salmon seine fishery. Despite this second warning, Chaney was observed on July 31 seine fishing and taking salmon with the *F/V Pacific Rose*.

For his conduct on July 31, the State later filed an information charging Chaney with fishing with an overlength commercial salmon seine vessel in violation of AS 16.05.835. Chaney filed a motion to dismiss the charge, which was denied by the trial court, and a jury subsequently convicted him of the charged offense.

*There was sufficient evidence to support Chaney's conviction*

Chaney contends that the evidence presented at his trial was insufficient to establish that the "overall length" of the *F/V Pacific Rose* exceeded fifty-eight feet, or to prove that he acted with the culpable mental state — *i.e.*, that he knew or should have known that the *F/V Pacific Rose* was longer than fifty-eight feet.

When a defendant challenges the sufficiency of the evidence to support a criminal conviction, an appellate court is required to view the evidence, and all reasonable inferences that can be drawn from that evidence, in the light most favorable

to upholding the jury's verdict.[6] Viewing the evidence in this light, the reviewing court then asks whether a reasonable juror could find that the State had proved the defendant's guilt beyond a reasonable doubt.[7] When this Court reviews the sufficiency of the evidence to support a conviction, it does not weigh the credibility of witnesses, as witness credibility is exclusively a question for the jury.[8]

*The evidence was sufficient to establish that the vessel was overlength*

Chaney claims the evidence that the *F/V Pacific Rose* was longer than fifty-eight feet was insufficient because an expert witness testified at trial that the troopers' measurement, taken while the vessel was still in the water, could have had a six- to nine-inch variance. He also contends that the entire assembly attached to the vessel should have been excluded from the measurement because it was an anchor roller.

Regarding any variance in the vessel's measurement, the jury heard testimony that the troopers measured the *F/V Pacific Rose*'s length at sixty-two and one-half feet. Even if the jury accepted the expert's testimony that there could have been a variance, the jury could still reasonably conclude that Chaney's vessel was overlength — *i.e.*, that it was longer than the maximum permissible length of fifty-eight feet.

Regarding the assembly attached to the *F/V Pacific Rose*, the jury was presented with evidence that the vessel's "anchor roller assembly" also provided deck space. In fact, one of the state troopers who measured the *F/V Pacific Rose* explained that the tip of the bow of the vessel had been removed and sealed as a flat surface, and

---

[6] *See Iyapana v. State*, 284 P.3d 841, 848-49 (Alaska App. 2012) (citing *Morrell v. State*, 216 P.3d 574, 576 (Alaska App. 2009)).

[7] *Id.* at 849.

[8] *Morrell*, 216 P.3d at 576 (citing *Ratliff v. State*, 798 P.2d 1288, 1291 (Alaska App. 1990)); *Daniels v. State*, 767 P.2d 1163, 1167 (Alaska App. 1989).

then the bow had been bolted back on to the vessel.[9] The photographic exhibits admitted at trial clearly confirm the trooper's testimony and show the tabs attaching the tip of the bow — which included several feet of deck space — to the rest of the vessel. Based on this evidence, the jury could reasonably conclude that under 5 AAC 39.975(c), the assembly was not an "anchor roller," and should have been included in the overall length measurement.

It is true that the jury heard testimony that, when measured under federal regulations, the *F/V Pacific Rose*'s length was less than fifty-eight feet. But according to the testimony, this difference arose because federal law, unlike Alaska law, excludes vessel hull attachments such as Chaney's "anchor roller assembly" when the vessel's length is measured. Chaney was charged under Alaska law, and reasonable jurors could find that the assembly was the type of attachment that was required to be included when determining the *F/V Pacific Rose*'s overall length.

*The evidence was sufficient to prove that Chaney acted with the culpable mental state*

Chaney also argues the evidence was insufficient to establish that he knew or should have known that his vessel was overlength. In particular, he notes that evidence presented at trial established that marine surveyors applying only federal law determined that the *F/V Pacific Rose* was under fifty-eight feet. But Chaney's argument views the evidence in the light most favorable to himself. We have reviewed the evidence, and conclude that, when viewed in the light most favorable to the verdict, the

---

[9] The trooper testified that he was familiar with the practice of bows being removed from vessels for the purpose of complying with length limitations. According to the trooper, the resulting atypical "blunted off" design allowed waves to come over the top of the vessel, which "could be dangerous."

evidence established that Chaney knew or should have known that the vessel was overlength.

First, the jury heard that when the Board of Fisheries was considering adopting the "anchor roller" definition, Chaney wrote a letter asking that the Board not do so because the proposed definition of "anchor roller" would make his vessel "illegal." That is, Chaney was aware that if the proposed definition was adopted, then under Alaska law, the assembly attached to the *F/V Pacific Rose* would be included in the vessel's overall length.

The jury also heard that on July 9, 2017, a trooper warned Chaney that the assembly attached to the *F/V Pacific Rose*'s bow made the vessel too long for salmon seining use. At that time, Chaney told the trooper that he was aware of the then-new regulation defining "anchor roller." And on July 25, the troopers measured the *F/V Pacific Rose* in Chaney's presence and informed him that its overall length was sixty-two and one-half feet. Despite this information, Chaney still used this vessel to seine salmon on July 31.

Although Chaney introduced evidence that marine surveyors had calculated the length of the *F/V Pacific Rose* at fifty-seven and one-half feet, the evidence showed that those surveyors reached that measurement based on federal regulations. One of Chaney's expert witnesses conceded that federal regulations regarding how to measure a vessel's length differ from Alaska regulations on this point. Under federal regulations, marine surveyors would have excluded the assembly attached to the *F/V Pacific Rose* because federal regulations broadly exclude "fittings and attachments" that extend beyond the hull of the vessel.

Based on this evidence, the jury could reasonably conclude that Chaney knew or should have known that the *F/V Pacific Rose* exceeded fifty-eight feet.

*The regulation is not inconsistent with the statute*

Chaney next argues that the definition of the term "anchor roller" in 5 AAC 39.975(b) is inconsistent with the intent of AS 16.05.835(a) and (c), the statutory provisions that exclude the anchor roller from the overall measurement of a vessel. In Chaney's view, the regulation is inconsistent with the statute because, under the regulation, "anchor rollers" are no longer excluded from the overall measurement.

Under AS 16.05.251, the Board of Fisheries has a broad grant of authority to adopt regulations to manage fisheries. And under AS 16.05.835, the Board has specific authority to manage the length of vessels used in the salmon seine fishery.[10]

When an agency has adopted regulations under a delegation of authority from the legislature using the process prescribed by the Administrative Procedures Act, we presume that the regulations are valid and place the burden of proving otherwise on the challenging party.[11] We limit our inquiry to whether the regulation is consistent with and reasonably necessary to carry out the purposes of the statutory provisions and whether the regulation is reasonable and not arbitrary.[12]

When the issue involves agency expertise or determination of fundamental policy questions on subjects committed to an agency's discretion, we employ a rational basis standard and defer to the agency's determination so long as it is reasonable.[13] Whether the regulation is necessary to implement the statute involves fundamental policy

---

[10] AS 16.05.835(a), (c).

[11] *Chalovich v. State, Dep't. of Nat. Res.*, 104 P.3d 125, 128 (Alaska 2004); *see also O'Callaghan v. Rue*, 996 P.2d 88, 94-95 (Alaska 2000).

[12] *Chalovich*, 104 P.3d at 128.

[13] *Id.*

determinations which we also review under a rational basis standard.[14] We may defer to an agency's interpretation of a statute if undefined terms appear in the statute.[15]

The record in the present case shows that the Board of Fisheries was concerned that the absence of a statutory or regulatory definition of "anchor roller" was causing inconsistent enforcement of AS 16.05.835, the maximum length statute. During the Board's hearing on the proposed definition, the Chair explained that "[t]here has been a long history of varying levels of liberty taken with what constitutes an anchor roller." Another Board member pointed out that the ambiguity had allowed people to exceed the length limitation of vessels used in the salmon seine fishery. Ultimately, a majority of the of the Board passed a regulation that clarified the definition of "anchor roller" — narrowing the scope of gear that could be excluded from the overall measurement of vessels in the salmon seine fishery.

Contrary to Chaney's position, the definition adopted by the Board in 5 AAC 39.975(b) still excludes "anchor rollers" from a vessel's overall measurement as required by the statute. Devices "used solely in aid of deploying and retrieving anchor gear" are still considered "anchor rollers" and are still excluded from the measurement of the overall length of a vessel.[16]

We accordingly conclude that 5 AAC 39.975(b) is not inconsistent with AS 16.05.835(a) and (c). We also conclude that the regulation is reasonably necessary to implement that statute and is neither arbitrary nor irrational.

---

[14] *Id.*

[15] *Bradshaw v. State, Dep't of Admin, Div. of Motor Vehicles*, 224 P.3d 118, 122 (Alaska 2010) (citing *Flisock v. State*, *Div. of Ret. & Benefits*, 818 P.2d 640, 643 n.4 (Alaska 1991)).

[16] AS 16.05.835(a), (c) & 5 AAC 39.975(b).

*5 AAC 39.975(b) is not unconstitutionally vague*

Chaney also contends that the definition of "anchor roller" in 5 AAC 39.975(b) is so vague that it deprives him of due process because "no reasonable person could know what an anchor roller is or whether their boat has an anchor roller that is legal or not." He asserts that the terms "flotation, planing surface, sea keeping ability, buoyancy, deck space, or structural support" are technical terms not in the vocabulary or comprehension of a reasonable person.

A criminal statute or ordinance is unconstitutional when it is "so vague that [people] of common intelligence must necessarily guess at its meaning and differ as to its application."[17] Alaska recognizes that "the possibility of difficult or borderline cases will not invalidate a statute where there is a hard core of cases to which the ordinary person would doubtlessly know the statute unquestionably applies."[18] In such cases, a defendant may not "complain of lack of adequate notice, and [a] void-for-vagueness contention will succeed only if the statute is otherwise so nebulous that it must be stricken on its face."[19] Chaney has the burden of proving his claim that the regulation is void for vagueness.[20]

Here, the regulation provides that an anchor roller may not provide deck space or structural support to the vessel. In Chaney's case, numerous photographs submitted at trial showed the assembly — to which the anchor roller is bolted — clearly provided deck space and structural support for that deck. The deck space provided

---

[17] *State v. Lawler*, 919 P.2d 1364, 1365-66 (Alaska App.1996) (quoting *F/V Am. Eagle v. State*, 620 P.2d 657, 665 (Alaska 1980)).

[18] *Stock v. State*, 526 P.2d 3, 9 (Alaska 1974).

[19] *Id.* at 10.

[20] *Lawler*, 919 P.2d at 1367 (citation omitted).

access to the anchor, and state troopers were able to stand on it while measuring the vessel. Also, as we mentioned earlier, Chaney objected to the Board's adoption of the current regulation *because* he was aware that his assembly included more than "devices used solely [to] deploy[] and retrieve[] anchor gear."

In short, an ordinary person would doubtlessly know that the regulation's definition of "anchor roller" excludes the additional deck space and structural support attached to the bow of the *F/V Pacific Rose*. The "technical terms" of the regulation are well within the vocabulary and comprehension of a reasonable mariner.[21] Consequently, we conclude that the regulation is not unconstitutionally vague.

*Conclusion*

The judgment of the district court is AFFIRMED.

---

[21]   *Cf. id.* at 1366; *State v. Martushev*, 846 P.2d 144, 150 (Alaska App. 1993).