NOTICE

*The text of this opinion can be correct before the opinion is published in the* *Pacific Reporter.* *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

MATTHEW FOY,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-13019
Trial Court No. 2NO-16-00324 CR

O P I N I O N

No. 2725 — June 10, 2022

Appeal from the Superior Court, Second Judicial District, Nome, Jane F. Kauvar, Judge.

Appearances: Gavin Kentch, Law Office of Gavin Kentch, LLC, Anchorage, for the Appellant. Elizabeth T. Burke, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Wollenberg and Harbison, Judges.

Judge ALLARD.

Matthew Foy was convicted, following a jury trial, of first-degree assault, third-degree assault, third-degree criminal mischief, and first-degree witness tampering based on a series of incidents in which Foy attacked Denise Topkok and threatened

another person with a knife.[1]  On appeal, Foy contends that there was insufficient evidence presented at trial to support his convictions for the charged offenses.  We have reviewed the record in this case, and we conclude that the evidence was sufficient to support all of Foy's convictions except his conviction for first-degree assault.  We therefore reverse the first-degree assault conviction and remand this case to the superior court to enter a conviction for the lesser included offense of third-degree assault and to resentence Foy accordingly.

Foy also argues that the first-degree assault charge was the result of prosecutorial vindictiveness.  The State maintains that Foy failed to present a *prima facie* case in support of this claim.  The State also contends that Foy waived any claim of prosecutorial vindictiveness by failing to bring a timely motion raising the issue in the superior court.  We conclude that we do not need to resolve this issue because our reversal of the first-degree assault conviction renders any claim of prosecutorial vindictiveness moot.

*Background facts*

Because Foy challenges the sufficiency of the evidence to support his convictions, we present the facts in the light most favorable to the jury's verdicts.[2]

On May 16, 2016, Denise Topkok offered Foy a ride from Nome to Teller.  According to Topkok's later statement to the troopers, Foy and Topkok had an altercation on an isolated stretch of road at about 2:00 a.m. on May 17.

---

[1]  AS  11.41.200(a)(1),  AS  11.41.220(a)(1)(A),  AS  11.46.482(a)(1),  and AS 11.56.540(a)(1), respectively.  The jury also found Foy guilty of a second third-degree assault charge but this guilty verdict merged with the first-degree assault conviction.

[2]  *See Iyapana v. State*, 284 P.3d 841, 848-49 (Alaska App. 2012).

In her statement to the troopers, Topkok reported that Foy hit her in the face after she told him she would not drive him back to Nome that morning. She also told the troopers that when she got out of the car, Foy followed her and put his arm around her neck for "[p]robably over a minute." Topkok reported that Foy would "squeeze and then quit" and that he threatened to kill her. When the trooper asked if Foy was "cutting off your flow of air at all," Topkok answered "yeah" and that her throat was sore. But when Topkok was asked whether she had a "hard time breathing," she answered, "I don't know, it just, like, happened too fast," and she said that she was able to "slip out" of Foy's grasp. Foy and Topkok then got back in the car, and Topkok drove them the rest of the way into New Site (an area of Teller).

When Topkok and Foy arrived in New Site, Topkok pulled up to the house of her neighbor, Agatha Pikonganna. Pikonganna later testified that she was hosting a poker night at her home and that she, Melanie Wasky, and several other guests witnessed Topkok drive up. David Miller, Topkok's brother-in-law, was also nearby at his own home.

According to Pikonganna, Topkok got out of the car and asked for help, saying that Foy had just choked her. Pikonganna also told the jury that Foy appeared to be intoxicated and that he threatened to kill Topkok and her family.

David Miller testified that when Topkok got out of the car, Foy began aggressively "chest bump[ing]" Topkok. In response, Miller stepped between Topkok and Foy. According to Miller, Foy reacted angrily to this and began shouting at him. Foy shouted in Miller's face and spit on him, and Miller told Foy to back away. Foy continued spitting on him, and Miller testified that this prompted him to push Foy to the ground. Foy then got to his feet and pulled out a knife, threatening to "slice [Miller's] throat," which caused Miller to back away because he was afraid of being stabbed by Foy.

Foy left and went to Topkok's nearby house. About an hour later, Pikonganna and Wasky heard the sound of breaking glass. Miller went to investigate, taking a shovel to defend himself against Foy. When Miller arrived at Topkok's house, he saw a window break. He then yelled until Foy came outside. Miller verbally confronted Foy and told him to stop breaking windows.

The state troopers arrived a few hours later, at around 7:00 a.m. They first spoke with Miller and the other witnesses and then talked to Topkok, who provided a detailed statement describing Foy's assault on her. The troopers observed a red mark on Topkok's neck, at her collar.

The troopers next went to Topkok's residence. They found both entrances blocked from the inside, household belongings strewn around, and a broken window. Foy was sleeping on a bunk bed inside the home. The troopers handcuffed Foy and recovered the knife. After being read his *Miranda* rights, Foy gave a rambling account of the incident in which he claimed that he was attacked in a vehicle by an unknown woman and that a man had broken Topkok's window with a shovel. Foy also claimed that he felt threatened, and that is why he pulled out the knife. Foy denied ever hitting or harming Topkok.

*Procedural history*

On May 26, 2016, the prosecutor prepared an indictment charging Foy with three crimes: third-degree assault for the conduct involving David Miller, third-degree assault for the conduct involving Denise Topkok, and third-degree criminal mischief for breaking Topkok's window. However, Topkok did not respond to the grand jury

subpoena, and the prosecutor therefore only went forward with the third-degree assault against Miller.[3]

On June 21, Foy filed a bar complaint against the prosecutor, alleging that the prosecutor was harassing witnesses. The prosecutor responded to the complaint with a letter describing Foy as "a seasoned criminal defendant seeking to gain some advantage in his latest proceedings by making false accusations about the prosecutor." On August 30, the Alaska Bar Association notified Foy and the prosecutor that the grievance did not warrant further investigation.

About a week later, on September 7, the prosecutor convened a second grand jury. This time, Topkok appeared. Topkok told the grand jury that although she and Foy had a "verbal argument," they did not have a physical altercation. To impeach this testimony, the prosecutor introduced the recordings of Topkok's statement to the troopers on the morning after the assault. The second grand jury indicted Foy for first- and third-degree assault for strangling Topkop, as well as third-degree criminal mischief for breaking the window.[4]

On November 2, a third grand jury indicted Foy for the crime of witness tampering.[5] The evidence presented to this grand jury established that, between the first two grand jury proceedings, Foy spoke to Topkok on the phone several times. During these conversations, Foy acknowledged that Topkok had made a number of statements to the troopers accusing him of assaulting her. He also acknowledged that Topkok was subpoenaed to testify before the grand jury. In one of the calls, Foy instructed Topkok to tell the grand jury that nothing happened between them and that the troopers "put

---

[3]   AS 11.41.220(a)(1)(A).

[4]   AS 11.41.200(a)(1), AS 11.41.220(a)(1)(A), and AS 11.46.482(a)(1), respectively.

[5]   AS 11.56.540(a)(1).

words in [her] mouth." At the second grand jury hearing, Topkok testified that nothing happened between Foy and herself and she claimed that the trooper "was most likely putting words in my mouth."

The matter then proceeded to a jury trial. At trial, Topkok testified that she was intoxicated during her phone calls with Foy and when she testified before the grand jury. She also testified that although she and Foy got into a verbal argument in the car between Nome and Teller, nothing more happened. According to Topkok, she did not remember what she told the troopers.

The prosecutor then played the recording of Topkok's report to the troopers as a prior inconsistent statement.

The jury found Foy guilty of all charges.

*Foy's insufficiency arguments on appeal*

On appeal, Foy argues that there was insufficient evidence presented at trial to support his convictions. When we evaluate the sufficiency of the evidence, we are required to view the evidence — and all reasonable inferences arising from that evidence — in the light most favorable to the jury's verdict and ask whether a reasonable fact finder could have found the defendant guilty beyond a reasonable doubt.[6] We do not evaluate the weight of the evidence or witness credibility, as those are questions for the fact finder.[7]

We address Foy's arguments in the order in which he raises them in his brief.

---

[6] *Iyapana*, 284 P.3d at 848-49 (citing *Morrell v. State*, 216 P.3d 574, 576 (Alaska App. 2009)).

[7] *Morrell*, 216 P.3d at 576.

*1. The witness tampering conviction*

Foy argues first that there was insufficient evidence to support his conviction for witness tampering.

To establish that Foy was guilty of first-degree witness tampering, the State was required to prove beyond a reasonable doubt that Foy "knowingly induce[d] or attempt[ed] to induce a witness to . . . testify falsely, offer misleading testimony, or unlawfully withhold testimony in an official proceeding."[8]

Foy makes three separate arguments for why there was insufficient evidence to convict him of witness tampering. We begin with his argument that the evidence presented at trial shows only that he coached Topkok to deliver truthful testimony in a favorable light, as permitted by *Rantala v. State*.[9]

In *Rantala*, we noted that AS 11.56.540(a)(1) criminalizes any attempt to induce a witness to "*unlawfully* withhold testimony."[10] We held that, because it is not unlawful "to encourage a person to exercise their right to decline to testify if they have not been subpoenaed," nor is it unlawful to ask a witness to provide "yes" or "no" answers when appropriate and to refrain from volunteering information, such conduct did not constitute witness tampering.[11]

Foy's case is clearly distinguishable from *Rantala*. Here, the jury heard a recording of Topkok's initial statement to the troopers reporting that Foy had punched and choked her. The jury also heard a recording of a phone conversation between Foy and Topkok discussing whether Topkok should testify before the grand jury and what

---

[8]   AS 11.56.540(a)(1).

[9]   *Rantala v. State*, 216 P.3d 550 (Alaska App. 2009).

[10]   *Id.* at 555 (emphasis in original).

[11]   *Id.* at 556-61.

she should say. During this conversation, Foy told Topkok that she should testify that nothing happened between them and that the troopers "put words in [her] mouth." The jury additionally heard a recording of Topkok's grand jury testimony, where she stated that the trooper was "most likely putting words in my mouth."

Given this record, we have little difficulty concluding that there was sufficient evidence presented at trial from which a reasonable juror could find that Foy "knowingly induce[d] . . . a witness to . . . testify falsely . . . in an official proceeding."[12]

Foy also argues that the State presented insufficient evidence to establish that the statements Topkok made when she testified under oath were false. We note, as an initial matter, that Foy would still be guilty of first-degree witness tampering even if Topkok had testified truthfully because AS 11.56.540(a)(1) criminalizes an "attempt" to induce a person to testify falsely, even if that attempt is unsuccessful.

But in any event, there was sufficient evidence presented at trial from which a fair-minded juror could conclude beyond a reasonable doubt that Foy *successfully* induced Topkok to testify falsely at the grand jury. As already mentioned, the jury heard Topkok's prior recorded statements to the troopers that Foy had hit and choked her. The jury also heard Topkok's contradictory testimony at the grand jury and at trial that nothing had happened between her and Foy. The jury could reasonably credit Topkok's prior statements over her grand jury and trial testimony.[13]

Lastly, Foy argues that he could not have committed witness tampering because Topkok was intoxicated when she spoke with him on the phone about her testimony and when she testified before the grand jury. But Foy provides no authority

---

[12]   *See* AS 11.56.540(a)(1).

[13]   *See Iyapana v. State*, 284 P.3d 841, 848-49 (Alaska App. 2012) (citing *Morrell v. State*, 216 P.3d 574, 576 (Alaska App. 2009)).

for the proposition that, as a matter of law, a defendant cannot be guilty of witness tampering simply because the witness was intoxicated when the defendant attempted to induce them to testify falsely, nor are we aware of any such authority.[14] We accordingly reject this claim of error and affirm Foy's conviction for witness tampering.

### 2. The criminal mischief conviction

Foy argues next that there was insufficient evidence to support his conviction for criminal mischief.

To establish that Foy was guilty of third-degree criminal mischief, the State was required to prove beyond a reasonable doubt that Foy intentionally "damage[d] [the] property of another in an amount of $750 or more" with "no right to do so or any reasonable ground to believe [he] ha[d] such a right."[15] "The amount of damage caused by an act of criminal mischief may be established through evidence showing either diminution in value or reasonable cost of repair."[16]

On appeal, Foy does not dispute that there was sufficient evidence that he broke the window, but he contends that the State did not present sufficient evidence to establish that he caused at least $750 in damages. At trial, Topkok's landlord testified that a new window would cost "[$]600 for a window, and like another six [hundred] for labor and expenses," for a total repair cost of approximately $1,200. By contrast,

---

[14]  *Cf. Spencer v. State*, 164 P.3d 649, 653 (Alaska App. 2007) ("There is no categorical rule barring the testimony of a witness who has been drinking, and we reject [the appellant's] suggestion that we should adopt such a rule. Instead, trial judges should handle these situations as the circumstances require.").

[15]  AS 11.46.482(a)(1).

[16]  *Young v. State*, 848 P.2d 267, 271 (Alaska App. 1993).

Topkok testified that she had already purchased a window for $400 and that her uncles would install it for her, apparently for free.

Here, the jury's verdict establishes that the jury credited the landlord's testimony over Topkok's testimony. We will not second-guess such credibility decisions on appeal. Accordingly, we reject Foy's contention that there was insufficient evidence to support his conviction for third-degree criminal mischief.

### 3. The first-degree assault conviction

At trial, the jury found Foy guilty of first-degree assault (for recklessly causing serious physical injury with a dangerous instrument) and third-degree assault (for recklessly placing Topkok in fear of imminent serious physical injury with a dangerous instrument) based on the allegations that he choked and hit Topkok.[17] These guilty verdicts merged at sentencing into a single conviction for first-degree assault. On appeal, Foy challenges the sufficiency of the evidence to support the first-degree assault conviction. For the reasons explained here, we conclude that the evidence was insufficient to support the first-degree assault conviction but sufficient to support a conviction for the lesser included offense of third-degree assault (for recklessly causing physical injury with a dangerous instrument).[18]

To establish that Foy was guilty of first-degree assault, the State was required to prove beyond a reasonable doubt that Foy "recklessly cause[d] serious physical injury to [Topkok] by means of a dangerous instrument."[19] In other words, the

---

[17] AS 11.41.200(a)(1) and AS 11.41.220(a)(1)(A), respectively.

[18] AS 11.41.220(a)(1)(B).

[19] AS 11.41.200(a)(1).

State needed to prove beyond a reasonable doubt that Foy used "a dangerous instrument" *and* that he caused "serious physical injury."

In 2005, the Alaska legislature added a new prong to the definition of "dangerous instrument." Prior to 2005, "dangerous instrument" was defined as "any deadly weapon or anything that, under the circumstances in which it is used, attempted to be used, or threatened to be used, is capable of causing death or serious physical injury."[20] However, prosecutors often had a difficult time proving that a defendant used their hands as dangerous instruments in strangulation cases unless they had an expert who could directly establish that the strangulation caused a substantial risk of death.[21]

In response, the legislature amended the definition of dangerous instrument to include a second definition of "dangerous instrument" targeted at strangulation cases. The second definition defined "dangerous instrument" as including "hands or other objects when used to impede normal breathing or circulation of blood by applying pressure on the throat or neck or obstructing the nose or mouth."[22] The legislative intent behind this amendment was to ensure that strangulation cases could be prosecuted as felonies.[23]

---

[20]   Former AS 11.81.900(b)(15) (pre-2005 version).

[21]   Minutes of House Judiciary Comm., House Bill 219, testimony of Tara Henry, R.N., Sexual Assault Nurse Examiner, and Assistant Attorney General Anne Carpeneti, 8:53-9:11 a.m. (Mar. 23, 2005).

[22]   SLA 2005, ch. 20, § 1; former AS 11.81.900(b)(15)(B) (2005). The second definition in the statute was amended again in 2019 to the current version: "'dangerous instrument' means . . . hands, other body parts, or other objects when used to impede normal breathing or circulation of blood by applying pressure on the throat or neck or obstructing the nose or mouth." SLA 2019, ch. 11, § 3; AS 11.81.900(b)(15)(B).

[23]   *See* Minutes of House Judiciary Comm., House Bill 219, testimony of Representative

<span style="float:right">(continued...)</span>

On appeal, Foy does not dispute that there was sufficient evidence that he used his hands in a manner that rendered them a "dangerous instrument" — *i.e.*, that he used his hands to "impede normal breathing . . . by applying pressure on the throat or neck."[24] Instead, Foy disputes only whether the evidence was sufficient to prove that he actually caused Topkok "serious physical injury" by means of that dangerous instrument.

"Serious physical injury" is defined as:

(A) physical injury caused by an act performed under circumstances that create a substantial risk of death; or

(B) physical injury that causes serious and protracted disfigurement, protracted impairment of health, protracted loss or impairment of the function of a body member or organ, or that unlawfully terminates a pregnancy.[25]

Here, the State relied solely on the first definition, asserting that Foy's conduct created "a substantial risk of death." To prove "a substantial risk of death," the State need not prove that death was the probable result of the defendant's actions; but the State does need to prove that the risk of death was both real (and not merely hypothetical) *and* that the risk was "substantial."[26]

---

23 (...continued)
Mike Hawker, 8:42:28 a.m. (Mar. 23, 2005) ("Currently it is very difficult to establish the 'serious injury' criteria in situations involving strangulation . . . so as to be able to prosecute such situations as a felony. There is not always physical evidence that strangulation has occurred, and HB 219 proposes to assist the legal community in such cases, which currently are being prosecuted as misdemeanors.").

24 AS 11.81.900(b)(15)(B).

25 AS 11.81.900(b)(59).

26 *See Hutchings v. State*, 53 P.3d 1132, 1137-38 (Alaska App. 2002) (explaining that the existence of a "substantial risk of serious physical injury" depends on the "particular circumstances" of the case and not hypothetical cases); *Konrad v. State*, 763 P.2d 1369, 1373 (continued...)

As previously noted, when we consider a claim of insufficiency on appeal, we view all the evidence presented at trial and all reasonable inferences to be drawn from that evidence in the light most favorable to the jury's verdict.[27] We then determine whether a fair-minded fact finder, viewing the evidence in this manner, could find the defendant guilty beyond a reasonable doubt.[28]

At trial, Topkok claimed that nothing physical happened between her and Foy. But she was impeached by her prior inconsistent statements to the troopers and her excited utterance to her neighbor that Foy "choked" her. These prior statements therefore form the primary evidentiary basis for the jury's verdict.

The jury also heard from the trooper who initially interviewed Topkok and who testified that he had received "specialized training in strangulation." The trooper acknowledged that Topkok's only visible injury was some light redness on her neck that

---

[26] (...continued)
(Alaska App. 1988) (emphasizing that, in determining whether a dangerous instrument is capable of causing death or serious physical injury, "[i]t is the actual use of the instrument in each case that must be considered, not abstract possibilities for use of the instrument in hypothetical cases"); *Brown v. State*, 2008 WL 4531666, at *3 (Alaska App. Oct. 8, 2008) (unpublished) (noting that the jury instructions correctly stated that "substantial risk of death" meant that "[t]he ultimate injuries need not have made death probable, but the manner in which the injuries were inflicted had to present an actual, substantial risk of death"); *Redman v. State*, 1997 WL 184774, at *4 (Alaska App. Apr. 16, 1997) (unpublished) (rejecting appellant's assertion that "substantial risk of death" meant that death had to have been "probable"); *Willett v. State*, 836 P.2d 955, 959-960 (Alaska App. 1992) (holding that the State did not prove a "substantial risk of death" because it presented no evidence that victim's injuries were "actually life-threatening"); *cf. State v. Mayo*, 511 P.2d 456, 458 (Or. App. 1973) (holding that a substantial risk of death is not established by showing only that there is a possibility of risk of death).

[27] *Iyapana v. State*, 284 P.3d 841, 848-49 (Alaska App. 2012) (citing *Morrell v. State*, 216 P.3d 574, 576 (Alaska App. 2009)).

[28] *Id.*

was difficult to see in a photograph. But he testified that Topkok's lack of injuries was still "consistent" with strangulation because, according to his training, only fifteen percent of strangulation cases result in visible injuries. The trooper also acknowledged that Topkok had referred to Foy's conduct as putting her in a "chokehold" rather than "strangulation." The trooper stated that "strangulation" and "choking" are "different terms," although not always used correctly.

The trooper testified that strangulation was dangerous because it only took "ten to fifteen seconds" of occlusion of the carotid or jugular vein to cause a blackout, dizziness, or loss of consciousness. The trooper further testified that "[o]nce loss of consciousness happens . . . it's anybody's guess whether somebody will wake up from that."

But Topkok never claimed that Foy put sustained pressure on her neck. Instead, she told the trooper that Foy put his arm around her neck and was *intermittently* "squeezing and . . . letting go and then squeezing again" for "[p]robably over a minute." Topkok also never claimed that she suffered a blackout, dizziness, or loss of consciousness from Foy's actions. In her recorded statement, Topkok said that she did not remember if she was able to breathe because it all "happened too fast." At trial, the trooper testified that Topkok affirmatively said that she *was* still able to breathe. The trooper also testified that "[it] did get to the point where she felt like she was going to black out, but didn't."[29] Topkok did not report any other indicia of strangulation, such as vomiting, hyperventilation, loss of bladder or bowel control, or petechiae.[30]

---

[29] This statement does not appear in the recorded statements played to the jury.

[30] *See* Minutes of House Judiciary Comm., House Bill 219, testimony of Tara Henry, R.N., Sexual Assault Nurse Examiner, 8:53:53 a.m. (Mar. 23, 2005) (discussing signs of life-threatening strangulation); *Carter v. State*, 235 P.3d 221, 226 (Alaska App. 2010) (discussing

(continued...)

To convict Foy of first-degree assault (a class A felony), the State was required to prove, beyond a reasonable doubt, that Foy caused serious physical injury by means of a dangerous instrument. Here, the evidence established that Foy used his arm as a dangerous instrument to temporarily impede Topkok's airflow on an intermittent basis. The evidence also established that Foy caused physical injury to Topkok and that his intent was likely to do so, or at least to frighten Topkok. But the evidence did not establish that Foy's actual conduct was so dangerous as to create a *substantial* risk of death, even when viewed in the light most favorable to upholding the jury's verdict. To rule otherwise would be to collapse the difference between "dangerous instrument" and "serious physical injury" and to say that any time a person impedes another person's breathing or blood circulation (however momentarily), the person has automatically created a substantial risk of death sufficient to establish proof of "serious physical injury," beyond a reasonable doubt.

Accordingly, we conclude that the evidence at trial, even when viewed in the light most favorable to upholding the jury's verdict, was insufficient to support a conviction for first-degree assault.

We note that, in addition to being instructed on first-degree assault, the jury was also instructed on the lesser included offenses of second-degree assault (recklessly causing serious physical injury) and third-degree assault (recklessly causing physical injury by means of a dangerous instrument).[31] Because the evidence at trial was insufficient to establish that Topkok suffered "serious physical injury," there is insufficient evidence to enter a conviction for the lesser included offense of second-

---

[30] (...continued)
expert testimony regarding relationship between petechiae and strangulation).

[31] AS 11.41.210(a)(2) and AS 11.41.220(a)(1)(B), respectively.

degree assault in this case.[32]  However, the evidence was clearly sufficient to support a conviction for the lesser included offense of third-degree assault.  We therefore reverse the first-degree assault conviction and direct the superior court to enter a conviction for the lesser included offense of third-degree assault.[33]

### 4. The third-degree assault conviction against Miller

Lastly, Foy argues that there was insufficient evidence presented at trial to support his conviction for third-degree assault against David Miller.

To establish that Foy was guilty of third-degree assault against Miller, the State was required to prove beyond a reasonable doubt that Foy "recklessly place[d] [Miller] in fear of imminent serious physical injury by means of a dangerous instrument."[34]  On appeal, Foy contends that there was insufficient evidence to support his conviction for third-degree assault against Miller because, according to Foy, he acted in self-defense when he drew his knife on Miller.

---

[32]  We note that strangulation cases are often charged as second-degree assault under AS 11.41.210(a)(1) ("with intent to cause physical injury to another person, that person causes physical injury to another person by means of a dangerous instrument").  *See, e.g.*, *Wassillie v. State*, 2022 WL 610626, at *1 (Alaska App. Mar. 2, 2022) (unpublished); *James v. State*, 2015 WL 5309209, at *1 (Alaska App. Sept. 9, 2015) (unpublished); *Tolen v. State*, 2012 WL 104477, at *1 (Alaska App. Jan. 11, 2012) (unpublished); *Hebert v. State*, 2010 WL 2432047 (Alaska App. June 16, 2010) (unpublished).  However, Foy was not charged under this subsection.

[33]  This conviction, under AS 11.41.220(a)(1)(B), should remain merged with the jury's guilty verdict on the separate third-degree assault charge against Topkok, for which there was also sufficient evidence.  *See* AS 11.41.220(a)(1)(A) ("recklessly places another person in fear of imminent serious physical injury by means of a dangerous instrument").

[34]  AS 11.41.220(a)(1)(A).

With certain enumerated exceptions, a person in Alaska may use deadly force against what they reasonably believe is the unlawful use of force by another person to the extent necessary to protect against death or serious physical injury.[35] The initial aggressor may not use the justification of self-defense.[36]

In this case, Foy received a self-defense instruction at trial, and he does not challenge the adequacy of that instruction on appeal. Instead, he argues that any reasonable juror would have concluded that he acted in self-defense.

But we have reviewed Miller's testimony, and we conclude that, viewing this testimony in the light most favorable to the verdict, a reasonable juror could have concluded that the State had disproved Foy's claim of self-defense. While there was enough evidence to justify a self-defense instruction, the jury could have concluded either that Foy was the initial aggressor or that he used deadly force to respond to the use of nondeadly force, both of which would defeat a claim of self-defense.[37] Accordingly, we reject Foy's insufficiency claim and affirm his conviction for third-degree assault against Miller.

*Foy's vindictive prosecution claim*

Foy also raises a vindictive prosecution claim. Foy bases this claim on the fact that the prosecutor initially prepared an indictment for the first grand jury hearing charging only third-degree assault for the conduct involving Topkok (which was later withdrawn when Topkok did not appear for the grand jury). But after Foy filed a bar complaint against the prosecutor and asserted his right to a speedy trial, the prosecutor

---

[35] AS 11.81.330(a); AS 11.81.335(a).

[36] AS 11.81.330(a)(3).

[37] AS 11.81.330(a)(3); AS 11.81.335(a).

later charged Foy with first-degree assault, in addition to third-degree assault, for the same conduct at the second grand jury hearing.

The State argues that Foy waived this claim by failing to bring a timely motion in the trial court proceedings. The State also argues that Foy failed to establish a *prima facie* case of prosecutorial vindictiveness.

The State is correct that Foy did not timely raise this issue in the superior court. Foy raised this claim for the first time in a motion to dismiss the indictment that was not filed until after Foy was convicted at trial. Alaska Criminal Rule 12(b) requires a claim alleging a defect in the institution of the proceedings to be raised prior to trial.[38] There are possible exceptions to this rule.[39] But Foy does not argue that any of them apply here.

In any event, we conclude that we need not reach the question of whether Foy has waived his prosecutorial vindictiveness claim by bringing an untimely motion because our decision to reverse Foy's first-degree assault conviction has rendered this claim moot.

---

[38] *See* Alaska R. Crim. P. 12(b)(1); *see also* Fed. R. Crim. P. 12(b)(3)(A)(iv) (identifying selective or vindictive prosecution as a defect in instituting the prosecution and requiring defenses and objections based on such defects to be raised before trial).

[39] *See* Alaska R. Crim. P. 12(e) ("Failure by the defendant to raise defenses or objections or to make requests which must be made prior to trial, at the time set by the court pursuant to section (c), or prior to any extension thereof made by the court, shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver."); *see also Iyapana v. State*, 284 P.3d 841, 846-47 (Alaska App. 2012) (holding that grand jury defects cannot be raised for the first time on appeal but noting that "policy considerations may require us to review a grand jury violation that is singularly egregious" and that "a defendant may be able to establish manifest injustice in a case where the grand jury violation is of such a nature that the state would be unable to secure a new indictment in a renewed jury proceeding").

*Conclusion*

For the reasons explained in this opinion, we REVERSE Foy's conviction for first-degree assault in Count IV and remand this case to the superior court with instructions to enter a judgment of conviction for the lesser included offense of third-degree assault and to resentence Foy accordingly. In all other respects, the judgment of the superior court is AFFIRMED.